568 So.2d 146 (1990)
Eddie Ray HILL, Plaintiff/Appellant,
v.
L.J. EARNEST, INC., Defendant/Appellee.
No. 21696-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
Writ Denied December 14, 1990.
*147 W. Orie Hunter, III, Shreveport, for plaintiff/appellant.
Campbell, Campbell & Johnson by John T. Campbell, James M. Johnson, Minden, for defendant/appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Plaintiff, Eddie Ray Hill, appealed the judgment of the trial court in favor of defendant, L.J. Earnest, Inc., in plaintiff's action for workers' compensation benefits. Finding that plaintiff was totally and permanently disabled as a result of his injuries, we reverse and render.

Issues Presented
On appeal, plaintiff asserts the following assignments of error:
1) The trial court erred in ruling plaintiff was not entitled to workers' compensation benefits because he failed to report to light duty work;
2) The trial court erred in ruling plaintiff was not entitled to workers' compensation benefits, because he quit his job as a security guard;
3) The trial court erred in not finding plaintiff totally and permanently disabled and entitled to workers' compensation benefits including penalties and attorney's fees;
4) The trial court erred in ruling that defendant/employer was not required to prove the availability of employment for plaintiff near his residence; and,
5) The trial court erred in allowing the testimony of two defense witnesses over the objection of plaintiff.

Factual Context
Plaintiff had been employed by defendant as a truck driver for approximately two weeks before he was involved in a collision with another truck driven by a co-employee on June 24, 1983. As a result of the accident plaintiff injured his right knee, which eventually necessitated surgery. Following plaintiff's knee injury, he had several episodes where his leg simply gave way and he would fall to the ground. On one occasion this occurred, causing plaintiff to injure his back. Plaintiff later underwent a hemi-laminectomy which removed a portion of the lamina of the L-5 S-1 vertebra and a herniated disc. Following release by his physician for light duty work, plaintiff was offered a light duty position with defendant at his previous rate of pay. Plaintiff did not attempt to contact *148 defendant to inquire what the work would entail and later obtained other employment.
On November 5, 1985 plaintiff instituted this action for workers' compensation benefits naming as defendant his employer. Plaintiff alleged that he was performing his duties as the driver of a tractor-trailer rig hauling a load of shoulder gravel to a job site when he was struck by a tractor-trailer rig driven by a co-employee. As a result of the collision, plaintiff asserted he had sustained severe and disabling injuries to his back and knee requiring repeated hospitalizations and surgery. Plaintiff contended that since the date of the collision he had been disabled from doing work of any similar character to that which he was doing at the time of his accident and upon release by his physician he was instructed to avoid heavy work activity. As he was incapable of performing the work he formerly engaged in and was suited for by reason of his training and experience, plaintiff alleged he was totally and permanently disabled. Defendant had paid plaintiff weekly compensation benefits at the rate of $183.33 through September 27, 1985 but refused to pay plaintiff any further compensation. Plaintiff alleged defendant was duly notified of the accident and that the failure to pay workers' compensation benefits beyond that date was arbitrary, capricious and without probable cause, thus entitling plaintiff to penalties and attorney's fees. Plaintiff prayed for judgment against defendant for compensation at the maximum allowable rate beginning on or about September 27, 1985 and continuing for the duration of his disability.
In its general denial answer defendant alleged that in September 1985 plaintiff was released by his physician to return to his employment provided he would be doing light work until such time as he could resume the full duties of his original position. Defendant asserted that it requested that plaintiff return to work, advising him he would only be required to do light work in accordance with the doctor's instructions but plaintiff refused to return. Defendant contended it had repeatedly offered plaintiff light work employment which was consistently refused. Defendant further alleged if plaintiff sustained any disability it was only a partial disability since he was capable of performing and was performing work at comparable wages.
At the trial on the merits, plaintiff, who was 38 years old on the date of the accident, testified he had begun working at age 16 and had worked solely as a farmer or truck driver. Following the accident plaintiff was treated at Bossier General Hospital and eventually had surgery on his right knee. In November 1983 when plaintiff was doing his knee exercises, he fell in his yard when the knee gave way and severely injured his back. Plaintiff testified he had never experienced any problems with his knee or back prior to the work-related accident and characterized his health before the accident as excellent. Plaintiff had back surgery in October 1984 and testified that until the time of his surgery he was in extreme pain. At the time of trial plaintiff was receiving follow-up therapy and taking pain medication. Plaintiff stated that as a result of his injuries he was no longer able to participate in sports and fishing. Plaintiff testified that working was extremely difficult due to his physical limitations and he could no longer drive a truck since he could not sit for extended periods of time nor could he farm because he could not drive a tractor across rough fields. Plaintiff experienced pain even riding in an automobile.
Following his back surgery, plaintiff was employed as a full-time security guard with Pickett Food Services for approximately one year at the same rate of pay he was earning from defendant. Plaintiff's duties consisted of answering the phone and watching a gate. He was not sitting all of the time. Plaintiff testified he was limited in his duties because he could not walk around the premises and was strictly confined to the gate area. Plaintiff eventually quit this job since due to his physical limitations, he did not feel he was carrying his part of the load. This was unfair to the other security guards. During his employment with Pickett, plaintiff testified he experienced pain in his back and legs. Plaintiff also experienced swelling in his legs *149 and his right knee if he walked too much. Plaintiff took pain medication and testified that sometimes in an eight hour shift he would take four or five Tylenol III to ease the pain. Following his employment with Pickett, plaintiff was employed as a full-time foreman by Asplundh Tree Service, supervising a tractor crew. Plaintiff testified he also experienced pain on this job even though he could move around and was not confined to one area. After working for approximately eight months, plaintiff was laid off when the job was finished. Plaintiff then earned money by doing yard work with the assistance of his children. Plaintiff said he supervised his sons and would do some weeding but he could not perform for long periods of time, which required that the boys finish the jobs.
Plaintiff had an 8th grade education and stated he had no specialized training in any field. Plaintiff said that in performing the odd jobs he had held following the injury he was unable to work free of pain but had to work due to economic necessity. Plaintiff had received no medical benefits upon termination of his worker's compensation and testified he was frequently unable to purchase his pain medication.
Plaintiff had moved to Conroe, Texas and stated he had repeatedly tried to find employment in that area but was unable to get a job due to his physical condition. Plaintiff's primary physical limitation at the date of trial was pain in his back upon any extended activity, although he experienced swelling and soreness in his right knee and it continued to "give out" on occasion.
Plaintiff's wife picked up his compensation check from defendant's office and informed him that defendant expected him to return to work following his medical release. Plaintiff testified he assumed it would be heavy duty work and not the light duty instructed by his physician. Plaintiff said the reason he did not go to talk to the defendant about returning to work was because he had gotten the job with Pickett.
Plaintiff's complaints of pain were substantiated by the testimony of his wife, Faye Hill. Mrs. Hill testified that prior to the accident plaintiff had no physical problems and the family was quite active. Following the accident, plaintiff remained in bed all the time, unable to get up and work. In driving with his wife to his employment with Pickett, plaintiff complained of pain in his back. After plaintiff got off work, he would complain of being in pain and his feet swelling. Plaintiff would go to bed and was unable to do anything around the house. Mrs. Hill also drove plaintiff to his employment with Asplundh and testified plaintiff complained of hurting all the time. Plaintiff had been unable to support the family following the accident and continually complained of pain.
Dr. Thomas Edwards, an orthopedic surgeon, testified by deposition that he first saw plaintiff on the date of the accident and plaintiff related he was having pain in his right leg. Dr. Edwards saw plaintiff again two days later at which time he was admitted to the hospital complaining of pain in his right leg, right shoulder, left thigh and severe headaches. Plaintiff was placed on bed rest with medication and therapy. Dr. Edwards saw plaintiff on several occasions in July 1983 and plaintiff complained primarily of pain in his right knee and leg. Plaintiff also complained of the knee locking where he could not bend or straighten it. Plaintiff had surgery on his knee on July 27, 1983, which revealed plaintiff had "bunched up" tissue on the inside part of his knee known as the "fat pad syndrome". Dr. Edwards followed plaintiff's recovery through August and September 1983. In late September 1983 plaintiff began complaining more of pain in his neck, which Dr. Edwards testified was not unusual for a patient who has suffered trauma to various parts of the body. Following plaintiff's fall in November 1983 Dr. Edwards' examination revealed a lumbosacral strain or sprain. Plaintiff continued to complain of pain in his back extending to both hips and legs and was hospitalized in December 1983 for further evaluation and therapy. Following his discharge from the hospital, plaintiff used a "Tens" unit and was also taking various medications. Dr. Edwards continued to monitor plaintiff's back complaints through February 1985. *150 Plaintiff complained of pain and related he was unable to ride in a truck or any distance in a car. Dr. Edwards stated anyone who had significant back problems and/or back surgery usually had a difficult time going back to driving a truck because sitting was difficult. Dr. Edwards explained light duty work without heavy lifting, repetitive squatting, bending or confinement in fixed positions for extended periods of time would not violate any of the restrictions he might place on plaintiff. Dr. Edwards said plaintiff's knee should function upon extended activities but could cause long-term problems.
Dr. Jorge Martinez, a neurosurgeon, testified he first examined plaintiff on June 2, 1984 and he was complaining of lumbosacral pain radiating to both legs. Dr. Martinez performed an examination and reviewed a CT scan which revealed the suspicion of central disc herniation at the L-5 S-1 level. Although plaintiff was having chronic lumbosacral pain, Dr. Martinez did not feel surgical intervention was required and advised that conservative treatment continue. Dr. Martinez next saw plaintiff upon Dr. Edwards' request on October 11, 1984. Plaintiff had a myelogram and CT scan which showed the disc herniation appeared to be worsening and there were signs of a sensory deficit on the S-1 nerve root. Since it was found that plaintiff did not improve upon conservative treatment but rather was in fact worsening, Dr. Martinez recommended surgical intervention and performed the hemi-laminectomy.
Dr. Martinez next saw plaintiff on November 28, 1984. Plaintiff again showed sensory deficit on the S-1 nerve root and Dr. Martinez prescribed pain medication to keep plaintiff comfortable. Plaintiff was next seen on March 6, 1985 and was experiencing intermittent pain of the lumbosacral region with radiation to the left leg. Physical activities such as walking, bending, stooping or sitting caused him pain. Dr. Martinez had no reason to doubt plaintiff's subjective symptoms and continued to prescribe pain medication. In June and September 1985 plaintiff's complaints remained the same, with complaints of stiffness and soreness in the lumbosacral region especially related to physical activity. Dr. Martinez asserted plaintiff could return to light duty work activities at the end of September 1985 but recommended he should avoid any heavy lifting with bending and standing restricted to ten minutes at a time. He stated plaintiff could not have returned to truck driving at that time. Dr. Martinez examined plaintiff in January and March 1986 when plaintiff was working as a light duty security guard and complaining of lumbosacral pain in his legs, with discomfort while standing, sitting or walking. Dr. Martinez believed plaintiffs complaints of pain to be valid and continued to prescribe pain medication.
Dr. Martinez stated the normal period to obtain optimum recovery was approximately one year following the disc surgery. Plaintiff was continuing to complain of pain in May 1987, with consistent problems in bending, standing or walking over the course of his treatment. Dr. Martinez stated that in his opinion plaintiff had reached his optimum level of recovery and was experiencing residual discomfort due to the previous lumbar disc herniation. On the May 1987 visit Dr. Martinez again prescribed pain medication and testified he believed plaintiff's complaints of pain were valid and warranted the medication. Dr. Martinez next saw plaintiff in March 1988. Plaintiff continued to report lumbosacral discomfort and stated it had become worse. Plaintiff was examined by Dr. Martinez in February 1989 complaining of intermittent lumbosacral pain radiating to the right leg. Dr. Martinez advised plaintiff to continue in the same activities as previously described and testified that further surgical intervention would not be beneficial. In his opinion, plaintiff's future employment should be confined to light duty work, without any heavy lifting, sitting, standing, squatting or stooping for extended periods of time. Dr. Martinez testified he saw no reason to stop plaintiff from working as a security guard and felt it was good for plaintiff to be back in the job market. However, Dr. Martinez stated he did not feel plaintiff could safely return to driving a truck.
*151 Dr. Baer Rambach, an orthopedic surgeon, testified by deposition that he had examined plaintiff at the request of the defendant on May 22, 1984. At that time, plaintiff was complaining of persistent discomfort in his lower back and stated he could not sit in the same position without experiencing a great deal of pain and also complained of swelling in his knee on occasion. Dr. Rambach's examination revealed plaintiff had made good recovery from his knee injury, which had not left him with any significant disability. His subjective complaints in regard to his back and leg were more pronounced than the objective physical findings. Dr. Rambach examined plaintiff again on April 13, 1989. Plaintiff complained of pain and swelling in his knee with his knee giving way on him and a great deal of difficulty with his back. Plaintiff reported the back surgery had helped but not enough to relieve him from the pain in order for him to return to work. Dr. Rambach testified he would not recommend further surgical intervention. He felt plaintiff should be doing work of a sedentary or semi-sedentary nature. Dr. Rambach fixed plaintiff's disability from the loss of the physical function of his lumbosacral spine at 25% with a 10% residual disability to his right knee. Dr. Rambach testified that plaintiff could not return to his job as a truck driver for a long period of time nor did he believe plaintiff could work in the construction industry.
The testimony of defendant's witnesses, Leslie "Junior" Harris and Catherine Bush established that a light duty position was available to plaintiff upon his medical release, but plaintiff refused to contact defendant and never attempted to return to work. Plaintiff's light duty position would have involved driving a pickup truck to deliver parts, stopping when he needed to, weighing trucks and writing tickets or work orders for the dump trucks. Plaintiff would have received the same rate of pay and this work would not have required any heavy lifting, sitting in a fixed position for long periods of time or extensive driving without stops. The testimony established that other injured employees had returned to similar light duty work with the defendant and plaintiff would have been permitted to perform these duties through the date of trial.
In oral reasons for judgment the trial court concluded that plaintiff's knee and back injuries had been sustained as a result of the work-related accident. The court stated it was denying benefits because plaintiff was informed he could return to work for defendant at a light duty position and had been released by his physician for such work. However, plaintiff did not report back to defendant because of his assumption that he would be driving a truck. The court stated it did not believe a party could be allowed to collect workers' compensation benefits on a mere assumption. The court further noted that plaintiff was working at another job subsequent to this period of time, which he later quit because he alleged he felt he was being unfair to his fellow employees. The court stated it was unfair to defendant to make it pay workers' compensation benefits when plaintiff was working and voluntarily chose to quit. The court noted that plaintiff was now living in the Houston area, which was a voluntary move on his part even though a job remained available here with defendant.

Legal Principles
The finding of disability within the framework of workers' compensation law is a legal rather than purely a medical determination. The provisions of the compensation statute are to be construed liberally in favor of the claimant. The claimant bears the burden of proving to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. In a compensation action the trial court has the responsibility of determining whether a claimant is disabled. In each particular case the totality of the evidence, both medical and lay testimony, must be examined by the trial court in making its determination on the question of disability and it is the function of the trial court to assess the weight to be accorded to such testimony. Degruy v. Pala, Inc., 525 So.2d 1124 (La.App. 1st Cir.1988), writ denied, 530 So.2d 568 (La.1988); Jackson v. Georgia Casualty and Surety Company, *152 513 So.2d 530 (La.App. 2d Cir.1987), writ denied, 515 So.2d 448 (La.1987); Green v. Jackson Rapid Delivery Service, 506 So.2d 1345 (La.App. 2d Cir.1987); Barry v. Western Electric Company, Inc., 485 So.2d 83 (La.App. 2d Cir.1986), writ denied, 487 So.2d 441 (La.1986), and Attaway v. Farley's Glass Company, Inc., 430 So.2d 705 (La.App. 2d Cir.1983).
The Louisiana Workers' Compensation Act in effect on the date of plaintiff's injuries is controlling. Holiday v. Borden Chemical, 524 So.2d 285 (La.App. 1st Cir. 1988), writ denied, 531 So.2d 283 (La.1988) and Hernandez v. F.W. Woolworth Company, 516 So.2d 139 (La.App. 4th Cir.1987), writ denied, 516 So.2d 361 (La.1987). On the date of plaintiff's accident, La.R.S. 23:1221(2) defined total permanent disability as follows:
For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training and experience ...
Under the law as it existed at the time of plaintiff's injuries, the jurisprudence had adopted the "odd lot" doctrine under which the claimant was entitled to total and permanent disability if the evidence of his physical impairment and other factors such as mental capacity, education and training indicated that he could perform no services other than those which were so limited in quality, dependability or quantity that a reasonably stable market for them did not exist. The doctrine does not require that the employee be completely helpless or totally unemployable and it is not synonymous with "unable to obtain employment". The "odd lot" doctrine also encompasses the situation where a worker cannot return to gainful employment without suffering substantial pain when his pain renders him unable to perform any service for which a reasonably dependable market exists. To qualify as substantial, the pain accompanying routine tasks or attempts to return to work must be serious, intense or severe. The jurisprudence has provided that the reasons for classifying substantial pain cases within the framework of the "odd lot" doctrine are that an employee who experiences substantial pain when performing routine physical tasks may find severely limited employment opportunities. Normally, an employer would find it less desirable to hire someone who must endure serious pain while working and the fact of that pain may restrict the scope of activities in which the employee can be engaged. Furthermore, recurrent pain may cause frequent absenteeism either because of the inability to work when the pain is particularly severe or because of the necessity of seeking medical treatment. These factors, among others, place the employee who must work in pain at a competitive disadvantage to healthy workers in finding employment. Moreover, there is a possibility that the injured employee may be susceptible to a second injury or the prior injury may be aggravated in the course of employment, thus making the employer liable for the resulting disability.
If the claimant's pain appreciably limits the type of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an "odd lot" worker and awarded total disability. Once the prima facie case has been made out for classifying the claimant in the "odd lot" category, the employer must show that some form of gainful occupation is regularly and continuously available to the employee within a reasonable proximity to the employee's residence. See Culp v. Belden Corporation, 432 So.2d 847 (La. 1983); Lattin v. Hica Corporation, 395 So.2d 690 (La.1981); Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); DeGruy v. Pala, Inc., supra; Jackson v. Georgia Casualty & Surety Company, supra; LaPrarie v. Liberty Mutual Insurance Company, 463 So.2d 908 (La.App. 2d Cir.1985) and, LeBaron v. Louisiana Pacific Corporation, *153 434 So.2d 496 (La.App. 2d Cir.1983), writ denied, 440 So.2d 758 (La.1983).
The claimant's condition at the time of trial is the criterion to ascertain if the disability is permanent or temporary, partial or total. Where a plaintiff is disabled at the time of trial and his disability is of indefinite duration, plaintiff's disability is properly classified as permanent. Ramsey v. Dragon Limited, 448 So.2d 745 (La.App. 4th Cir.1984) and LeBaron v. Louisiana Pacific Corporation, supra.

Disability of Plaintiff
On appeal plaintiff argues he should not be disqualified from receiving workers' compensation benefits simply because he failed to report to light duty work since he was no longer able to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted. Plaintiff further contends he should not be disqualified from benefits due to his employment as a security guard as he was working in substantial pain due to economic necessity. Plaintiff asserts that his injuries place him squarely within the "odd lot" category due to the evidence of his physical impairment and other factors, such as education and training, which indicated he could perform no services other than those which were so limited in quality, dependability or quantity that a reasonably stable market for them did not exist. Finally, plaintiff argues that defendant was obligated to show that some form of suitable work was regularly and continuously available to him within a reasonable proximity to his Houston/Conroe residence.
Based upon our review of the record, we find the evidence established that plaintiff was totally and permanently disabled as the result of the work-related accident and the trial court erred in denying workers' compensation benefits.
As noted above, claimant may be found to be totally and permanently disabled under the "odd lot" doctrine if by reason of his physical impairment and other factors, such as education, mental capacity or training, indicate he can perform only those services which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist, or cannot return to gainful employment without suffering substantial pain. The record shows that plaintiff established his burden of proof that he was an "odd lot" worker under both theories.
Plaintiff had been a manual worker for his entire working life, having only been employed as either a farmer or truck driver. He had an eighth grade education with no specialized training in any field. It is evident from the record and plaintiff's testimony that he was incapable of any type of office work. Therefore, it is clear that plaintiff's education, training and experience limit him to those positions entailing manual labor. It is equally clear from the evidence that plaintiff's injuries have caused permanent disabilities which severely limit his ability to perform manual labor duties. The medical testimony established that plaintiff suffered a 10% disability to his knee and a 25% disability to his spine. Plaintiff is unable to engage in repetitive motions such as bending and stooping and is unable to engage in any heavy lifting. The testimony established that plaintiff could not sit or stand for extended periods of time and was conclusive that plaintiff could not return to his previous occupations as a truck driver or a farmer. Given these significant physical limitations, it is clear plaintiff is incapable of performing manual labor jobs for which there is a reasonably stable market. Under the particular circumstances of this case and considering plaintiff's very limited education, narrow work history and training, substantial disability and loss of function, we find the trial court erred in not placing plaintiff within the "odd lot" category.
It is also clear plaintiff has been and will be in substantial pain in performing any gainful occupation. Plaintiff returned to work due to economic necessity as a security guard and tree crew foreman. Plaintiff testified he endured severe pain in performing the duties of both jobs, requiring as many as four or five doses of pain medication on an eight hour shift. Plaintiff *154 was extremely limited as a light duty security guard. He was unable to fully perform the duties, such as walking the grounds, and those duties he could perform were completed in substantial pain. The physicians who examined plaintiff did not dispute plaintiff's complaints of pain and continued to prescribe pain medication. We note that the duties performed by plaintiff in his subsequent employment involved activities such as extended sitting or standing which the medical evidence indicated could be painful. Thus, plaintiff's complaints of pain in these jobs were consistent with the limitations and disabilities suggested by the physicians. We find that any possible employment of plaintiff, active or sedentary, would result in substantial pain, so as to place plaintiff in the "odd lot" category.
The trial court based its denial of benefits in part on plaintiff's refusal to return to light duty work offered by defendant. This was error,
Initially we note it was not established plaintiff could have performed the "light duty" job offered to him by defendant. That job was to include driving a pickup within a 125 mile radius. The record reflects plaintiff had substantial pain even traveling fairly short distances to and from work in a private vehicle. Thus, it is likely the "light duty" work offered by defendant would have caused significant pain. This conclusion is further supported by the medical testimony that plaintiff could not sit for extended periods of time and could not drive heavy vehicles. Although defendant asserted plaintiff could make frequent stops, as needed, this is of little consequence since this allowance would render plaintiff's job description so unique that there could be no reasonably stable job market for his services. Furthermore, plaintiff did not reject all light duty work but simply chose between two positions which were available to him at that time.
In response to plaintiff's claims of total and permanent disability under the "odd lot" doctrine, the defendant failed to prove the availability of employment to plaintiff. The only evidence of job availability offered by defendant was the light duty position described above. As it appears plaintiff could not perform that job, this evidence is insufficient. Because defendants failed to show any job availability in the Shreveport area where plaintiff resided at the time of the accident or the Houston/Conroe area where plaintiff resided at the time of trial, the plaintiff's proof of "odd lot" disability has not been overcome. We note that under certain circumstances there may be a legal issue as to whether the job availability must be shown in the place where the claimant resided on the date of the accident or some different location he moved to subsequent to the accident. However, that issue need not be addressed in this case as defendant failed to prove the availability of jobs in either location.

Penalties and Attorney's Fees
Plaintiff seeks penalties and attorney's fees for defendant's termination of his benefits on September 27, 1985, arguing that the termination of benefits on that date was arbitrary and capricious.
An employer is liable for penalties and attorney's fees for terminating benefits when its action is arbitrary, capricious or without probable cause. La.R.S. 23:1201.2. See also La.R.S. 22:658. Whether or not the termination or refusal to pay benefits is arbitrary, capricious or without probable cause depends primarily on the facts known to the employer at the time of its action and the termination of or failure to pay benefits is not arbitrary and capricious when it is based upon substantial bona fide factual contentions. Wills v. Solida Construction Company, 543 So.2d 1365 (La.App. 2d Cir.1989) and Harrison v. Chicago Mill & Lumber Company, 446 So.2d 843 (La.App.2d Cir.1984).
Based upon our review of the record, we do not find defendant acted arbitrarily or capriciously in disputing plaintiff's claim for total and permanent disability. Although plaintiff's injuries were serious and his disability substantial, his claim of total and permanent disability *155 was equivocal and subject to reasonable dispute by defendant, especially in light of plaintiff's subsequent employment.

Testimony of Witnesses
Having found plaintiff totally and permanently disabled, plaintiffs argument that the trial court erred in allowing the testimony of two defense witnesses over his objection is moot.

Decree
For the reasons stated herein, the judgment of the trial court denying plaintiff workers' compensation benefits is REVERSED and judgment is rendered in favor of plaintiff, Eddie Ray Hill, and against defendant, L.J. Earnest, Inc., for workers' compensation benefits in the sum of $183.33 per week from June 24, 1983, subject to a credit for all compensation payments made, with interest on each payment from date due until paid, and for all costs of this suit, both in the trial court and on appeal.