678 So.2d 75 (1996)
Maxine A. MAIDEN
v.
CROSSROADS OF LOUISIANA, INC.
No. 95-CA-1985.
Court of Appeal of Louisiana, Fourth Circuit.
July 24, 1996.
*76 Law Offices of Dale Edward Williams, Dale Edward Williams, Metairie, for Plaintiff-Appellee.
David K. Johnson, Baton Rouge, for Defendant-Appellant.
Before BARRY, KLEES and ARMSTRONG, JJ.
BARRY, Judge.
Plaintiff was injured in a work related accident. The hearing officer awarded temporary total disability benefits, penalties, and attorney fees. The defendants assert that the record does not support the award and that plaintiff's claim prescribed. Plaintiff answered the appeal and contends that her action was not prescribed for different reasons than stated in the judgment.

Facts
Maxine Maiden was on the Direct Care Staff of Crossroads of Louisiana and oversaw programs for the mentally retarded and developmentally disabled. On November 20, 1992 she injured her knee while restraining an unruly patient on a lunch outing. She testified that she noticed the wound when she was en route back to Crossroads. Maiden continued to work until December 28, 1992 when she was fired for reasons apparently unrelated to the accident.
Maiden testified that her first visit to the doctor was January 13, 1993. That doctor did not testify and his report is not in evidence.
Maiden was examined by orthopedist Dr. Michael Brunet on April 19, 1993, who diagnosed patellar tendonitis and medial retinaculum pain related to the injury. He testified by deposition that her leg muscle was weakened from decreased use and "until she got her quad [i.e., muscle mass] back, that it really wasn't appropriate for her to return back to work." Maiden returned to Dr. Brunet on May 31, 1993. His notes do not reflect work restrictions although he testified that he advised Maiden she could return to work with restrictions against squatting or repetitious climbing. Dr. Brunet said he saw Maiden in June and July 1993. His diagnosis was unchanged, though Maiden's knee was sore from overexertion. At the time of his deposition, Dr. Brunet recalled restricting Maiden from work, but his notes do not include that. His August 26, 1993 notes reflect that he instructed Maiden she could work four hours each day for four weeks. On October 21, 1993 Dr. Brunet again released Maiden to work with restrictions against climbing and squatting. Maiden saw Dr. Brunet in March, July, and September 1994, and she complained of continued knee pain.
Maiden filed her claim with the Office of Worker's Compensation on November 24, 1993. That claim (Form 1008) states that the accident occurred on November 28, 1992 and does not specify whether the claim was for medical or compensation benefits.
The hearing officer found that the accident occurred on November 20, 1992. He held that prescription was interrupted because the claim for medical benefits (Form 1008) was timely and Maiden's claim for compensation related back to that filing. The hearing officer awarded temporary total disability benefits from November 20, 1992 to October 21, 1993, the date Dr. Brunet released Maiden to work, and supplemental earnings benefits *77 until November 1, 1994, the date a job survey showed that Maiden was able to earn 90% of her pre-injury wages. The hearing officer also awarded $4,000 for attorney fees and a 12% penalty.

Prescription
The threshold issue is whether Maiden's compensation claim is prescribed. The hearing officer held that Maiden's claim for medical benefits was timely but her claim for disability compensation was prescribed on the face of the pleadings. He further held that the timely filing of the Form 1008 for medical benefits interrupted prescription on her claim for disability compensation. The defendants argue that Maiden did not timely file the Form 1008 and prescription was not interrupted. Maiden argues that her claim was timely because her injury was developing and the delay for filing did not begin earlier than December 28, 1992. We hold that Maiden had a "developing injury" which manifested itself as disabling no earlier than December 28, 1992 and her claim was timely filed on November 24, 1993.
Under La.R.S. 23:1209(A) a claim for compensation must be filed 1) one year from the accident; 2) one year from the last compensation payment (three years from the last payment where the claim is for supplemental earnings benefits); 3)one year from the time the injury develops if it is not immediately manifest, but no more than two years after the accident:
A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have begun within two years from the date of the accident. [Emphasis added.]
Worker's compensation laws are liberally interpreted in favor of protecting workers from the economic burden of a work related injury. Sevin v. Schwegmann Giant Supermarkets, Inc., 94-1859 p. 4 (La. 4/10/95), 652 So.2d 1323, 1325. To further that policy, the phrase "the time the injury develops" in the last sentence of La.R.S. 23:1209(A) is liberally construed where the worker attempts to continue working until no longer able to perform his or her employment duties. Id. at 1325-1326; Cheatham v. Morrison, Inc. 469 So.2d 1219, 1220 (La.App. 1st Cir.1985).
(A)n employee who suffers a work-related injury that immediately manifests itself, but only later develops into a disability, has a viable cause of action until one year from the development of the disabling injury, rather than from the first appearance of symptoms or from the first date of treatment.... The "time the injury develops," as interpreted to mean the date the disability develops, is usually determined as the time when it becomes clear that the worker can no longer perform his or her employment duties in a satisfactory manner.... Thus the "developing injury" rule has been applied not only when the injury does not manifest itself immediately, but also when the employee, after an accident in which injury is immediately apparent, continues to attempt employment duties until he or she is finally disabled from doing so. [Citations omitted.]
Sevin v. Schwegmann Giant Supermarkets, Inc., 652 So.2d at 1326.
Maiden's knee bled, was swollen and sore on the day of the accident, November 20, 1992. However, the injury was not disabling and Maiden continued to work until December 28, 1992 when she was fired. Her injury *78 became disabling on or after December 28, 1992 and she did not have a cause of action for a total disability claim until that time. Thus her claim was timely on November 24, 1993.

Temporary Total Disability
The hearing officer held that Maiden "cannot return to her pre-injury job," and awarded temporary total disability benefits from the day she was fired, December 28, 1992, until on October 21, 1993, when Dr. Brunet released her to full time work with certain restrictions. The defendants assert that Maiden did not prove she was totally disabled.
La.R.S. 23:1221(1) establishes the burden of proof for temporary total disability payments:
(b) ... (C)ompensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.
(c) ... (W)henever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. [Emphasis added.]
La.R.S. 23:1221(1)(d) limits temporary total disability benefits to six months unless the claimant obtains an extension. The defendants did not appeal the duration of the award (ten months), and that issue is not before this Court.
The hearing officer did not address Maiden's burden of proof or discuss specific evidence. The record does not establish that Maiden was totally disabled prior to April 19, 1993 or after August 26, 1993.
There is no evidence or testimony that Maiden physically could not perform her job or engage in any employment when she was fired on December 28, 1992. Maiden testified that although her knee hurt, she could have continued working. Dr. Brunet's testimony that on April 19, 1993 "it really wasn't appropriate for her to return back to work" provides the first indication of Maiden's inability to work. Dr. Brunet's August 26, 1993 report and testimony reflect that he released her to work four hours a day for four weeks, after which she could return to a standard work day. Maiden did not prove that prior to April 19, 1993 and after August 26, 1993 she could not "engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment...." La.R.S. 23:1221(1)(c). Constrained by the record, we must reverse the award of temporary total disability benefits from December 28, 1992 to April 19, 1993 and after August 26, 1993.
We reject Maiden's argument that because rehabilitation services were implemented she is entitled to total disability from December 28, 1992. See La.R.S. 23:1226. There is no evidence that she was entitled to or received rehabilitation services during the pertinent time. That argument has no merit.

Penalties and Attorney Fees
The defendants appeal the twelve percent penalty and $4,000 for attorney fees.
The penalty provision in effect at the time of Maiden's injury shall apply. Henton v. Walker & Wells Contractors, Inc., 25,821 p. 8 (La.App. 2 Cir. 5/4/94), 637 So.2d 672, 677, writ den. 94-1491 (La. 9/23/94), 642 So.2d 1295.
Under La.R.S. 23:1201(B),
The first installment of compensation payable for temporary total disability ... shall become due on the fourteenth day after the employer or insurer has knowledge *79 of the injury ..., on which date all such compensation then due shall be paid.
Failure to pay shall result in a twelve percent penalty, unless the claim is "reasonably controverted." See former La.R.S. 23:1201(E), prior to its amendment by Acts 1992, No. 1003, § 1 (effective January 1, 1993).
Attorney fees are due for failure to pay a claim within sixty days after receipt of written notice when such failure is arbitrary, capricious, or without probable cause. See former La.R.S. 23:1201.2, prior to its amendment by Acts 1995, No. 1137, § 1 (effective June 29, 1995). Whether or not the refusal to pay is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of its action, and the failure to pay is not arbitrary and capricious when it is based upon a substantial bona fide factual contention. Hill v. L.J. Earnest, Inc., 568 So.2d 146, 154 (La. App. 2d Cir.), writ den. 571 So.2d 652 (La. 1990).
The hearing officer reasoned that a penalty is due because the defendants did not pay compensation within fourteen days of the December 28, 1992 termination of Maiden's job, apparently concluding that the defendants then had knowledge of Maiden's injury and the claim was not reasonably controverted. He held that attorney fees are due because the defendants received written notice of Maiden's claim through her attorney on March 18, 1993 and should have paid benefits.
Though Maiden immediately reported the accident by phone, she testified that she continued working for several weeks. Former co-worker John Frank testified that after the accident Maiden sometimes limped, but he corroborated her testimony that she performed her duties until she was fired on December 28, 1992.
On March 18, 1993 Maiden's attorney sent a letter to Crossroads of Louisiana advising that he represented her in connection with "any and all claims resulting from the injuries she sustained on or about November 20, 1992" and that the "initial investigation into this matter indicates liability on (Crossroads') part for benefits and medical expenses." However, absent Dr. Brunet's deposition testimony (given after Maiden's claim was filed), there is no medical evidence that Maiden could not work and that she sustained a compensable injury. That is significant considering that Maiden worked for weeks after the accident and was apparently fired for an unrelated reason.
The hearing officer was clearly wrong by finding that Maiden's claim was not "reasonably controverted" and that defendant's failure to pay temporary total disability compensation was arbitrary and capricious. We reverse the award for penalties and attorney fees. We pretermit the remaining assignments.
AFFIRMED IN PART; REVERSED IN PART.