691 So.2d 127 (1997)
Charleen S. KIRN
v.
EAST JEFFERSON HOSPITAL.
No. 96 CA 0838.
Court of Appeal of Louisiana, First Circuit.
February 14, 1997.
*128 Elizabeth Smyth Sirgo, Metairie, for Plaintiff/Appellant, Charleen S. Kirn.
Lawrence B. Frieman, Metairie, for Defendant/Appellee, East Jefferson Hospital.
*129 Before CARTER, LeBLANC and PARRO, JJ.
CARTER, Judge.
This is an appeal from a decision of a workers' compensation hearing officer, denying plaintiff supplemental earnings benefits, penalties, and attorney's fees and denying defendant's claim for a credit for overpayment of disability benefits in the amount of $215.46 per week for the years 1994 and 1995.

FACTS
On October 21, 1992, plaintiff, Charleen S. Kirn, was working as a licensed practical nurse for defendant, East Jefferson General Hospital (East Jefferson), when she injured her back while lifting a patient. She was treated conservatively until August 12, 1993. On that date, Dr. Lucien S. Miranne, Jr., a neurosurgeon, performed a lumbar laminectomy with foraminotomy at the L5-S1 level on the left. By September 2, 1994, Dr. Miranne felt plaintiff had reached maximum medical improvement and recommended a functional capacity evaluation be performed. A functional capacity evaluation was made on December 16, 1994, finding that plaintiff could not return to her previous job as a nurse, but could tolerate a more sedentary position with minimal light lifting.
Defendant paid plaintiff temporary total disability benefits at the rate of $215.46 per week from the date of the accident through the date of decision, January 13, 1996. The compensation rate was based on an average weekly wage figure of $323.20.
On February 20, 1995, plaintiff filed with the Office of Workers' Compensation a Disputed Claim for Compensation (Form 1008). Plaintiff claimed that she had sustained injuries which resulted in excess of seven days of lost time and that she had a continuing disability. She further claimed that benefits stopped even though the doctor had not discharged her or authorized her return to work. Defendant contended that plaintiff was not disabled and not entitled to workers' compensation benefits, asserting all rights to reduction of benefits, offset for overpaid benefits, and credit for medical expenses.
On December 4 and December 11, 1995, the matter was tried before a workers' compensation hearing officer. On January 13, 1996, the hearing officer rendered a decision, finding in favor of defendant and denying plaintiff's claims. In written reasons for his decision, the hearing officer found that plaintiff's proper weekly compensation rate was $279.47, or $64.01 per week more than she was being paid. The hearing officer held that, because defendant had corrected the deficiency and started to pay the correct amount, it was not arbitrary and capricious and that plaintiff was not entitled to penalties, interest, and attorney's fees. The hearing officer found plaintiff was capable of light or sedentary work, which would afford her ninety percent (90%) or more of her pre-injury wages, and thus she was not entitled to any additional benefits. Finally, the hearing officer found that testimony offered by defendant in support of its defense (that plaintiff derived income post-accident as a result of her ownership interest in a business called Monet's Garden) had no bearing on the issues in the case.
Plaintiff appealed from the adverse decision, assigning the following specifications of error:
(1) The hearing officer was clearly wrong and manifestly erroneous in failing to award plaintiff back compensation in light of the undisputed testimony that the defendant paid the wrong compensation rate to plaintiff from the time of the accident until the time of trial;
(2) The hearing officer was clearly wrong and manifestly erroneous in failing to award plaintiff penalties and attorney's fees based upon defendant's failure to provide a reasonable basis for its failure to pay plaintiff the appropriate compensation rate from the time of the accident until the time of trial;
(3) The plaintiff carried her burden of proof that she was entitled to back compensation at a rate of $64.01 per week from the time of accident until the time of trial, and therefore plaintiff should be awarded all costs, including attorney's fees and appeal costs; and
*130 (4) The hearing officer was clearly wrong and manifestly erroneous in denying plaintiff's claim for supplemental earnings benefits based upon the overwhelming evidence that plaintiff could not earn at least ninety percent (90%) of her pre-accident wages.
Defendant answered the appeal, arguing that the trial court erred in denying its request for a credit for disability benefits in the amount of $215.46 per week for the years 1994 and 1995.

FAILURE TO AWARD BACK COMPENSATION
A court of appeal may not overturn a decision of a hearing officer absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Before an appellate court may reverse a factfinder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong. Fontenot v. Trans Gulf, Inc., 95-0342, p. 8 (La.App. 1st Cir. 11/9/95); 664 So.2d 1238, 1245. The appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one, after reviewing the record in its entirety. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Washington v. Lyon's Specialty Company, 96-0263, p. 6 (La.App. 1st Cir. 11/8/96); 683 So.2d 367, 372.
In the instant case, the hearing officer found that the defendant admitted that at first it had miscalculated the plaintiff's weekly workers' compensation benefits, based on an inaccurate average weekly wage figure. However, the hearing officer found "when they discovered this they paid the amount that was due and started to pay the correct amount."
Plaintiff was paid a base rate of $10.10 per hour, an evening rate of $12.10 per hour, and a weekend rate of $13.10 per hour. Plaintiff introduced wage information from defendant indicating that, for the pay period ending October 3, 1992, plaintiff was paid $854.40 for sixty-four (64) hours at the various rates of pay. For the pay period ending October 17, 1992, she worked sixty-four (64) hours at the various rates of pay, and her wages totaled $822.40. Her average weekly wages, therefore, were $419.20.
A representative of defendant hospital's third-party administrator for workers' compensation claims testified that plaintiff was paid a compensation rate of $215.46, based on an average weekly wage of $323.20, since the date of the accident. For the period of time from approximately November 1, 1994, through March 31, 1995, no benefits were paid, but defendant brought the payments up to date, paying a monthly rate of $926.44. At the time of trial, defendant was still paying plaintiff the same rate paid for her temporary total disability, or $215.46.
We have reviewed the record in its entirety and can find no basis for the hearing officer's determination that defendant began paying plaintiff the correct compensation rate at any time. In its post-trial memorandum, defendant acknowledged that the average weekly wage was calculated by multiplying plaintiff's hourly rate of $10.10 by the number of hours she averaged per week to attain the figure of $323.20. However, defendant admits the shift differential for night and weekend work increased plaintiff's average weekly wage to $419.20, and plaintiff's compensation rate should have been $279.47. Defendant admits that it paid the wrong compensation rate from October 21, 1992, through December 31, 1993, resulting in a deficit of $64.01 per week for sixty-three (63) weeks, totaling $4,032.63.[1] However, Dr. Miranne determined that plaintiff did not reach maximum medical improvement until September 2, 1994. Defendant's obligation to pay compensation benefits for temporary total disability, therefore, was from October 21, 1992, through September 2, 1994. See LSA-R.S. 23:1221(1)(d). As a result, plaintiff is entitled to $64.01 per week for the *131 entire period from October 21, 1992, through September 2, 1994, or for ninety-eight (98) weeks, for a total of $6,272.98.
Accordingly, we find that the hearing officer was clearly wrong in its factual finding that defendant brought plaintiff's compensation payments up to date and agree with plaintiff that she is entitled to back compensation.[2]

PLAINTIFF'S ENTITLEMENT TO SUPPLEMENTAL EARNINGS BENEFITS
Plaintiff argues that she is entitled to supplemental earnings benefits (SEB) because the majority of the evidence indicated that she could not earn at least ninety percent (90%) of her pre-injury wages. The hearing officer found that she had received what was due to her and was capable of light or sedentary work that would afford plaintiff ninety percent (90%) or more of her previous wages.
Once a workers' compensation claimant establishes a prima facie case for entitlement to SEB, the burden shifts to the employer to show that the claimant is physically capable of work and that the work was offered or available to the claimant in her or the employer's community or reasonable geographic area. See LSA-R.S. 23:1221(3)(c)(i). If the employer meets this burden, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that she is unable to perform the employment offered or available solely as a consequence of substantial pain. See LSA-R.S. 23:1221(3)(c)(ii); Hurst v. Baker Sand Control, 94-2463, pp. 5-6 (La.App. 1st Cir. 10/6/95); 671 So.2d 408, 412. In making a prima facie showing, a claimant must establish that she has been unemployed since the date of the accident. Lemoine v. Hessmer Nursing Home, 94-836, p. 14 (La.App. 3rd Cir. 3/1/95); 651 So.2d 444, 453.
In this case, the hearing officer obviously believed that plaintiff made a prima facie showing that she had not worked since the date of the accident because of her injury. Although defendant argues that plaintiff was employed by the flower and gift shop called Monet's Garden, there is insufficient evidence that plaintiff earned wages from the shop. Therefore, the burden shifted to the employer to show that plaintiff was physically capable of work and that work was available within her community or reasonable geographic area.
At trial, an expert vocational rehabilitation counselor, Michele Brondum, testified that she had met with plaintiff personally and conducted an evaluation interview. Plaintiff obtained certification as a registered nurse in 1994. Ms. Brondum testified that, based upon plaintiff's prior experience as a licensed practical nurse and her license as a registered nurse, plaintiff could return to work as a nursing instructor or a utilization review nurse. Ms. Brondum identified actual positions available in plaintiff's general geographic area of the North Shore of Lake Pontchartrain, which would not violate plaintiff's physical restrictions and would pay ninety percent (90%) or more of what she was earning as a floor nurse at East Jefferson. She either met or spoke personally with representatives of several potential employers and learned that the plaintiff was considered eligible for these positions.
Plaintiff's expert vocational rehabilitation counselor, Nancy Favalora, did not meet personally with plaintiff, but reviewed medical reports and depositions, as well as reports submitted by Ms. Brondum. Ms. Favalora testified that the teaching positions Ms. Brondum identified would be unsuitable for plaintiff because she would be unable to stand for the entire class period and would also have difficulty demonstrating various nursing techniques. Nursing jobs at physicians' offices, also considered suitable for plaintiff by Ms. Brondum, would require plaintiff to lift more than ten pounds. Home-care coordinator or case manager positions demanded more experience than plaintiff *132 had. Ms. Favalora testified that plaintiff could work in a clerical medical-type position. Those jobs typically paid $6 to $7 an hour.
The hearing officer gave greater weight to Ms. Brondum's testimony than to Ms. Favalora's. In reasons for decision, he stated "[t]he claimant's attorney hired another vocational expert who testified, but she did not interview the claimant, did not administer any test to claimant, and did not find any jobs for claimant, therefore her testimony had very little weight if any." The determination of an expert's credibility is a factual question subject to the manifest error/clearly wrong standard of review. Moreover, after weighing and evaluating all of the evidence, the factfinder is free to accept or reject the opinions expressed by the experts. Augustus v. St. Mary Parish School Board, 95-2498, p. 5 (La.App. 1st Cir. 6/28/96); 676 So.2d 1144, 1150.
The hearing officer was not clearly wrong in deciding that plaintiff could return to work earning ninety percent (90%) or more of her previous wages. Plaintiff failed to rebut defendant's showing that employment was available to her in her geographic region. LSA-R. S. 23:1221(3)(c)(i).
Plaintiff urges us to award supplemental earnings benefits from the time of trial and continuing. On the other hand, defendant seeks a credit for any payments made in 1994 and 1995 because, it argues, plaintiff was earning actual wages during that time period. The decision from which both parties appeal denied plaintiff's claims and is silent as to defendant's request for a credit. We have found that plaintiff is entitled to benefits, including back pay, through September 2,1994. We now address defendant's argument that plaintiff earned actual wages from the enterprise known as Monet's Garden.

PLAINTIFF'S POST-INJURY WAGES
The hearing officer stated, in written reasons for decision, "[m]uch was made about claimant's interest in a business called Monet's Garden. Except for the fact that claimant sometimes worked at Monet's Garden, the testimony about the profits or loses [sic] of this business had no bearing on this case. Both claimant and defendant had accountants testify and their testimony had little to do with the issues in this case." We agree.
Monet's Garden was a subchapter S corporation owned equally by plaintiff and her roommate. A schedule K-1 return, reporting an S corporation's shareholder's share of income filed by plaintiff in 1994, indicated profits of $18,691.00 from Monet's Garden. The corporation's accountant testified concerning Monet's Garden's financial records, as did defendant's accountant. Defendant attempted to establish, through these witnesses as well as documentary evidence, that plaintiff received non-cash benefits which were the equivalent of income from the corporation (car payments, mortgage notes, utilities, and groceries). Further, defendant attempted to show that the corporation posted a profit for 1993 and 1994, which constituted income attributable to plaintiff's employment.
The only case defendant cites to support its position is Lafleur v. Hartford Insurance Company, 449 So.2d 725 (La.App. 3rd Cir. 1984), in which a claimant who bought a business jointly with his wife after his injury was found to be permanently and partially disabled. The issue before the court was how to calculate his benefits. The insurer was credited with earnings from plaintiff's business, but argued that plaintiff's wages should not have been reduced by his wife's one-half interest in determining benefits. Defendant also argued that payment for a van and group insurance should be considered income to the plaintiff, much as defendant in this case has argued that expenses paid by Monet's Garden are equivalent to income to plaintiff.
The court held in Lafleur that the reduction for plaintiff's benefits was correctly set at one-half of the net earnings from the business, because if plaintiff's wife had not worked with him in the business, he would have had to pay a salary to someone else. The court also found that the payment of van expenses and group insurance by the corporation could not be considered compensation to plaintiff.
This case does not support defendant's position. First, defendant has not proved that *133 plaintiff in fact derived any wages or salary from Monet's Garden or that plaintiff was self-employed. Considering all the testimony concerning various expenses passing through Monet's Garden, it is still inconclusive that such expenses constituted compensation or wages.
In Champagne v. Martin Mills, Inc., 607 So.2d 992 (La.App. 3rd Cir.1992), the trial court found that a co-owner of a convenience store was not self-employed, as he was unable to participate in the management or operation of the business. The trial court's ruling that claimant was not self-employed was not appealed. In the instant case, the evidence was clear that plaintiff's partner managed the business. Although plaintiff occasionally helped out at the store and played a role in planning and decision-making, she was not a full participant in the management or operation of Monet's Garden so as to rise to the level of employment. See Maire v. Charbonnet, 543 So.2d 544, 546 (La.App. 4th Cir.1989); Clark v. Bobby L. Clark Trucking, 28,405, pp. 5-7 (La.App. 2nd Cir. 6/26/96); 679 So.2d 157, 161-62. Defendant failed to show whether plaintiff's share of the adjusted gross income from Monet's Garden in 1994 and 1995 constituted wages to her or whether it constituted income from an investment source.

PENALTIES, ATTORNEY'S FEES, AND COSTS
In October, 1992, LSA-R.S. 23:1201 E governed the assessment of penalties for failure to pay compensation benefits timely[3] and provided, in pertinent part as follows:
If any installment of compensation payable without an order is not paid within the time period provided ... there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof.... The twelve percent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.
At all pertinent times, LSA-R.S. 23:1201.2 provided:[4]
Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, to payment of all reasonable attorney's fees for the prosecution and collection of the difference between the amount paid or tendered and the amount due.
A determination of whether a defendant should be cast with penalties and attorney's fees is a question of fact and is subject to the manifest error rule. Generally, an insurer will not be penalized for a simple miscalculation of benefits; however, penalties and attorney's fees have been imposed where the insurer gathers incomplete data in preparing the claim or makes no attempt to correct an error that was pointed out to it. An insurer may not proceed with an attitude of indifference to the injured worker's situation. Stegall v. J & J Exterminating, 94-1279, pp. 5-6 (La.App. 3rd Cir. 3/1/95); 651 So.2d 400, 403.
Defendant in this case argues that, although it was paying plaintiff the wrong compensation *134 rate, compensation benefits were overpaid to plaintiff in 1994 and 1995 because plaintiff should be charged with $18,691.00 in income, based upon profits earned by Monet's Garden. Defendant contends it should receive a credit when calculating any exposure for compensation benefits. Apparently defendant believes that despite the fact plaintiff did not reach maximum medical improvement until late 1994, any payments made to her at all (at the incorrect rate) in 1994 were overpayments in light of the other income.
Defendant admits that it knowingly underpaid plaintiff by $64.01 per week until her entitlement to temporary total disability benefits ceased on September 2, 1994. Rather than correcting the mistake, defendant gambled that its legal theorythat income derived by plaintiff from her S corporation constituted wageswould prevail.
Champagne v. Martin Mills, Inc., 607 So.2d at 995, held that an employer's termination of benefits based upon its knowledge of claimant's co-ownership of a convenience store was not arbitrary, capricious, or without probable cause and did not entitle the plaintiff to attorney's fees and penalties. This case is distinguishable from the case sub judice. In Champagne, defendant employer terminated benefits because it reasonably believed that plaintiff's purchase of a convenience store would result in self-employment income.
In contrast, defendant in this case did not underpay benefits based upon a reasonable belief. It knowingly continued paying at the wrong rate, even before defendant reached maximum medical improvement, assuming that ultimately it would be credited for any payments made after plaintiff's business enterprise was established and showed a profit.
Defendant cannot reasonably rely on its legal theory to establish that the plaintiff's right to benefits in the correct amount was controverted. It offered no proof that the error in its calculation of plaintiff's benefit was beyond its control or that her right to such benefits was reasonably controverted. Alexander v. B.F. Trappey & Sons, Inc., 635 So.2d 269, 271 (La.App. 3rd Cir.1994). Through most of 1994, plaintiff was undergoing treatment for her back condition. It was not until September 2,1994, that she was deemed able to return to work. Defendant was aware of the discrepancy in the rate calculation early on.
Accordingly, we award plaintiff penalties of twelve (12%) percent on the unpaid compensation benefits owed from the date of the accident, October 21, 1992, through September 2, 1994, when Dr. Miranne indicated plaintiff could return to work.
As to attorney's fees, there is no necessity for proof to be offered as to the value of the services of an attorney in fixing fees under the arbitrary and capricious provision. See Miller v. Roger Miller Sand, Inc. 95-1253, pp. 7-8 (La.App. 3rd Cir. 3/13/96); 676 So.2d 1084, 1089, writ granted in part, judgment reversed in part on other grounds, 96-2122 (La.11/22/96); 683 So.2d 295. Therefore, we fix attorney's fees at $5,000.00.[5]
Plaintiff is also entitled to legal interest on past workers' compensation benefits from the due date of each payment, until paid, and on penalties and attorney's fees from the date of judicial demand until paid. See Stegall v. J & J Exterminating, 651 So.2d at 403.
Plaintiff further argues that she is entitled to all costs associated with these proceedings, including $3,451.78 in preparing *135 the record for appeal and a cost bond in the amount of $2,500.00.[6] She asserts that it was the defendant's failure to pay the proper rate which led to trial. Moreover, she argues the vast majority of the testimony at trial, necessitating a three-volume transcript, related to the defense concerning Monet's Garden and whether plaintiff earned wages from the corporation.
Nonetheless, plaintiff appealed the hearing officer's decision at least in part because she believed she was entitled to supplemental earnings benefits. We have already determined that plaintiff failed to prove her entitlement to SEB, and that the defendant's obligation to pay her compensation for temporary total disability, therefore, terminated as of September 2, 1994. We do not agree that defendant should bear the entire cost of these court proceedings. Accordingly, we assess one-fourth of the cost of these proceedings to plaintiff and three-fourths to defendant.

CONCLUSION
For the above reasons, the decision of the hearing officer is affirmed insofar as it found that defendant is not entitled to a credit for payments made to plaintiff in 1994 and 1995 and insofar as it denied plaintiff's claim for supplemental earnings benefits. That portion of the hearing officer's decision finding that plaintiff is not entitled to back pay for the underpayment of compensation benefits from October 21, 1992 to September 2, 1994, is reversed, and judgment is rendered in favor of plaintiff and against defendant for $6,272.98, together with legal interest from the due date of each underpayment until paid. The decision is also reversed insofar as it found plaintiff was not entitled to attorney's fees and penalties for defendant's arbitrary and capricious behavior in underpaying compensation benefits, and judgment is rendered in favor of plaintiff and against defendant for penalties of 12% on the unpaid compensation benefits and $5,000.00 in attorney's fees, together with legal interest from date of judicial demand until paid. Costs are to be assessed one-fourth to Charleen Kirn and three-fourths to East Jefferson Hospital.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Apparently defendant admits to underpaying plaintiff's compensation benefits only through December 31, 1993, rather than through the date of decision, because Monet's Garden filed tax returns as a subchapter S corporation for 1994 indicating profits, which defendant argues are wages earned by plaintiff. This issue is discussed in the next section.
[2] Plaintiff argues that, as she carried her burden of proof that she is unable to earn at least ninety percent (90%) of her pre-injury wages, she is entitled to back compensation at the rate of $64.01 per week until the time of trial. However, as we will discuss later in the opinion, plaintiff's entitlement to temporary total disability benefits ceased as of the date Dr. Miranne determined plaintiff had reached maximum medical improvement on September 2, 1994.
[3] The law is clear that the penalty provision in effect at the time of the claimant's injury applies. Maiden v. Crossroads of Louisiana, Inc., 95-1985, p. 7 (La.App. 4th Cir. 7/24/96); 678 So.2d 75, 78, writ denied, 96-2145 (La.11/8/96); 683 So.2d 279. See Mitchell v. Dixie Roofing & Sheet Metal Co., Inc., 95-288, p. 8 (La.App. 3rd Cir. 10/4/95); 663 So.2d 222, 227.
[4] By Acts 1995, No. 1137, § 1, effective June 29, 1995, LSA-R.S. 23:1201.2 was amended to provide, in pertinent part, as follows:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
[5] We note that, under the law in effect at the time of plaintiff's injury, attorney's fees may be assessed only against an insurer or a self-insured employer. See Henderson v. New Medico Associates, Inc., 95-0488, p. 11 (La.App. 1st Cir. 11/9/95); 667 So.2d 1094, 1100, writ denied, 96-0505 (La.4/8/96); 671 So.2d 338; Hurt v. Western American Trucking Company, 26,918, p. 3 (La. App. 2nd Cir. 5/10/95); 655 So.2d 558, 560; Johnson v. Vinson Guard Service, Inc., 92-2187, p. 7 (La.App. 1st Cir. 3/11/94); 636 So.2d 914, 918, writ not considered, 94-1661 (La.9/2/94); 642 So.2d 1280. In the instant case, in Form 1008 filed by plaintiff, she named defendant as the employer and Gates McDonald as the insurer. However, subsequent pleadings filed by defendant revealed that Gates McDonald is not an insurer, but is an independent adjusting company retained by defendant to handle its compensation claims.
[6] We note that the cost of the appeal bond is not recognized as an awardable court cost.