623 So.2d 8 (1993)
Johnny L. CARTER
v.
BARBER BROTHERS CONTRACTING CO., INC.
No. CA 92 1439.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
Rehearing Denied September 14, 1993.
Otha Curtis Nelson, Sr., Simmons, Nelson & Dunn, Baton Rouge, for plaintiff-appellant Johnny L. Carter.
John H. Fetzer, III, Baton Rouge, for defendant Barber Bros. Contracting Co., Inc.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
EDWARDS, Judge.
This is an appeal by the plaintiff from a judgment holding that his claim for worker's compensation benefits/disability had prescribed pursuant to LSA-R.S. 23:1209(A). After a thorough review of the record, we affirm.

Background Facts
The plaintiff, Johnny L. Carter, was injured, on September 11, 1989, in an accident involving the eighteen-wheeler he was driving while in the course and scope of his employment as a truck driver for the defendant. Immediately following the accident, Carter was taken to the Baton Rouge General Medical Center where numerous tests and x-rays were performed. No serious injury was reported and he was discharged that same evening with a diagnosis of chest wall and abdominal wall contusions. The plaintiff began receiving temporary total disability benefits on the next day, September 12, 1989. *9 (Plaintiff's medical and transportation expenses were paid as well.)
On September 15, 1989, Carter began seeking treatment from Dr. Thad Broussard, an orthopedist, for back and neck pain. At that time, he was diagnosed with "acute cervical lumbar sprain/strain syndrome" and was advised not to return to work until followup. Accordingly, the temporary total disability payments continued. He was seen again on September 22, 1989 at which time Dr. Broussard noted: "He is much better... I don't think he is quite ready to return to the rigors of truck driving although I certainly feel that another week with therapy and the conservative medication which we have placed him on would be of benefit." One week later, Dr. Broussard saw the plaintiff and noted that he was "greatly improved" and that there did not appear to be any type of radicular problem. At that visit, Broussard also noted that he hoped to be able to release Carter for return to work in another week. Carter again saw Broussard on October 6, 1989, at which time Broussard reported that he was releasing Carter to return to work on October 11, 1989. Carter returned to work, at his former position, on October 12, 1989. Accordingly, the temporary total disability payments stopped on October 13, 1989. Carter had a followup visit with Broussard on November 11, 1989, at which time it was noted that Carter was continuing to work and doing better. Carter was supposed to return for followup in ten days; however, the medical evidence reflects that he did not return to Broussard until nine months later on August 3, 1990, at which time he had complaints of lower back pain which he stated was "interfering with his work." Broussard confirmed some lower back tenderness but also noted, "I do not believe he has true radicular symptoms."
During the nine months prior to his return to Broussard, Carter performed his usual position as truck driver continuously and without complaint of pain or discomfort on the job. In fact, even after he returned to Broussard in August, 1990, he continued to work until October 25, 1990. On November 5, 1990, Carter saw Broussard who reported that he would release Carter to return to work in one week.
Instead, Carter sought treatment from a neurosurgeon, Dr. Anthony Ioppolo, on November 8, 1990. Dr. Ioppolo felt that a lumbar MRI scan should be obtained in light of Carter's chronic complaints of pain, but he did note that "I do not anticipate this being dramatically positive." Further, he stated, "I do feel however that Mr. Carter is capable of working at this point and it is my understanding that he has been doing so." The lumbar MRI scan was performed on December 5, 1990, and on December 10, 1990, Dr. Ioppolo noted that the scan showed "some mild degenerative disc disease at L5, but no evidence of any herniation or nerve root compression." In a letter dated January 2, 1991, Dr. Ioppolo noted the following:
As I did note to you in my note of 12/10/90, I do not feel there is any ongoing pathologic problems relative to [Johnny Carter] and advised him at that time that I felt he could return to full, unrestricted activities. I am releasing him at this point to do so.
On January 15 and 17, 1991, Carter underwent a Functional Capacities Evaluation (FCE) by Marcia D. Weger, P.T., as ordered by Dr. Ioppolo. Weger diagnosed Carter with "mechanical back syndrome" and it was her opinion that he had not demonstrated the ability to physically return to his job as a heavy truck driver, although he could perform at a "sedentary level" of work. On March 4, 1991, the defendant, Barber Brothers, sent a letter to Carter's attorney of record indicating that there were "sedentary level" employment positions available and requesting a response as to whether Carter planned to comply with doctors' orders and return to work in a modified capacity. No response was made by Carter or his attorney, and as of the date of the hearing in this matter, Carter had not returned to work.
On November 11, 1990, Barber Brothers filed a disputed claim for compensation with the Office of Workers' Compensation, and on December 11, 1990, a claim was filed on behalf of Carter. The defendants then filed a peremptory exception raising the objection of prescription, which exception was sustained by the administrative hearing officer *10 by judgment dated July 17, 1991. The plaintiff appeals.

Absence of Transcript from the Record
Appellant notes in brief that the record does not contain a transcript of the testimony and evidence presented at the hearing of this matter held on July 7, 1991 and raises the issue of whether "the Court of Appeal should remand an appeal where the appellate record failed to contain a transcription (sic) of the oral testimony that was given at the trial on the merits." The appellant has the duty to secure either a transcript of the testimony or a narrative of facts; the inadequacy of the record is imputable to the appellant. Sea Tang Fisheries, Inc. v. You'll See Sea Foods, Inc., 569 So.2d 992 (La.App. 1st Cir.1990), cert. denied, 572 So.2d 89 (La. 1991); Bourque v. L.C. Electro-Comm., Inc., 460 So.2d 18 (La.App. 1st Cir.1984).

Prescription
The hearing officer held that Carter's claim for worker's compensation benefits filed on December 11, 1990, more than one year from the date the last benefit payment was made to Carter, October 13, 1989, was prescribed. The prescriptive periods for filing a claim for worker's compensation benefits in 1989 were clearly laid out in LSA-R.S. 23:1209(A), which provided, at the time of the accident, in pertinent part, as follows:
In case of personal injury, including death resulting therefrom, all claims for payment shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed.... Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment.... Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident. (emphasis added).
Although the appellant does not specify which type of benefits he claims entitlement to, he appears to be arguing that the injury was a developing injury, and thus the claim had not prescribed, and also that he is an "odd lot" worker, and entitled to benefits in that capacity. Further, he argues that he should be entitled to benefits for a high-blood pressure condition which he developed subsequent to seeking treatment and receiving therapy in 1990. After our review of the record including all of the medical evidence, we find no merit in these arguments, nor do we find error in the hearing officer's conclusion that this claim had prescribed.
The medical evidence does not support a finding that Carter's injury had not "developed" until August, 1990, when he returned to Dr. Broussard with complaints of continued pain; rather, the evidence negates such a finding. The accident occurred on September 11, 1989, and Carter's injury was immediately manifest and disabling. He was taken to the Baton Rouge General Medical Center that same day, and he began receiving treatment from Dr. Broussard on the next day, who diagnosed the injury as cervical lumbar sprain/strain syndrome. Clearly, at least the day following the accident, Carter's injury was developed and it was manifest that he would be unable to perform his usual employment. Accordingly, he received temporary total disability benefits until he was formally released to return to work on October 11, 1989 by his treating physician.
Further, the medical evidence also negates a finding that Carter should be classified as an "odd lot" worker. Although both physicians from whom he sought treatment in 1990 confirmed his complaints of pain, neither physician reported any objective findings of a disabling injury; in fact, both physicians released him to return to work. More significantly, Carter returned to work approximately one month following the accident, and performed his pre-injury duties as a heavy truck driver for nine months thereafter, continuously and without complaints of pain.
*11 Finally, there is absolutely no medical evidence in this record to show any causal connection between the injury to Carter's lower back in September, 1989, and his subsequent high blood pressure condition for which he received treatment from Dr. Hall in 1991.
Therefore, the prescriptive period applicable to Carter's claim pursuant to LSA-R.S. 23:1209(A) is one year from October 13, 1989, the date Carter's last disability payment was made. His claim, filed on December 11, 1990, was untimely, and the peremptory exception raising the objection of prescription was properly sustained. The hearing officer's judgment is accordingly affirmed. Plaintiff is assessed all costs of this appeal.
AFFIRMED.
SHORTESS, J., concurs, plaintiff was offered a sedentary job which he refused. Had he accepted it he may have shown that his wages were in lieu of compensation which would have interrupted prescription.