| TOBIAS, Judge.
Plaintiff, Michael Livaccari, filed a disputed claim for compensation on 31 August 1999[1], after defendants, Alden Engineering Services, Inc. (Alden) and Constitution State Service Company, refused to approve his request for pain management treatment by Dr. Richard Morse of the Touro Center for Chronic Pain and Disability Rehabilitation (“Touro”). Following a trial, the workers’ compensation judge determined that the pain management treatment recommended by Dr. Morse was reasonable and necessary and the defendants arbitrarily and capriciously refused to authorize it. In rendering judgment, the workers’ compensation judge ordered defendants to pay for the plaintiffs treatment at Touro and assessed a penalty of $2000.00 and attorney’s fees of $2000.00 against them. Defendants appealed from the judgment and plaintiffs answered the appeal.
Plaintiff was employed as a welder/fitter for Alden when he injured his left shoulder in an accident on 16 February 1996 during the course and scope of his employment. *917 Dr. Robert E. Ruel, Jr., plaintiffs treating orthopedic surgeon, l2operated on plaintiffs left shoulder in August and November 1996. In February 1997, after plaintiff returned with complaints of increasing pain in his neck, left shoulder and arm, Dr. Ruel suspected that he was suffering from Reflex Sympathetic Dystrophy (RSD) and recommended he see a vascular surgeon to determine whether a series of nerve blocks could alleviate his pain. Because defendants had not approved plaintiffs request for an evaluation by a vascular surgeon as of October 1997, the workers’ compensation judge ordered an examination by a vascular surgeon of plaintiffs choice. On 22 October 1997, Dr. Jan T. McClanahan, the vascular surgeon selected by plaintiff, examined him and, observing symptoms of RSD, referred plaintiff to an anesthesiologist for a nerve block. Another vascular surgeon, Dr. Robert C. Batson, conducted an independent medical exam of plaintiff in January 1998, noticed signs of RSD, and recommended a series of stellate ganglion nerve blocks for treatment.
In April 1998, with defendants’ approval, Dr. Stan Williams, an anesthesiologist at Lakeland Medical Center, performed a left cervical sympathetic block on plaintiff. Although Dr. Williams found objective evidence of the block’s effect, he determined that plaintiff had not experienced a significant change in his pain level or his ability to use his left shoulder and arm to warrant undergoing further nerve blocks. After conferring, Drs. Williams and McClanahan concluded that plaintiff failed to obtain a positive result from the block because the RSD had reached a chronic stage as a result of his not getting proper treatment at its onset.
|3Several months later, in November 1998, Dr. Leon A. Weisberg, a neurologist at Tulane University Hospital and Clinic (Tulane), examined plaintiff at the request of plaintiffs attorney. In a letter to plaintiffs counsel dated 10 November 1998, Dr. Weisberg stated that he diagnosed plaintiff with having RSD and recommended that plaintiff “see Dr. Melvin Gitlin or if Dr. Gitlin is not available, Dr. Richard Morse for this condition.”
On Dr. Weisberg’s referral, Dr. Gitlin, an anesthesiologist and Director' of Tulane’s Pain Management Center, examined plaintiff on 23 November 1998. He confirmed the earlier diagnosis of RSD and recommended that plaintiff undergo a series of nerve blocks. Plaintiff sought authorization for the pain treatment and defendants approved Dr. Weisberg as plaintiffs neuropsychiatrist and Dr. Gitlin as his anesthesiologist.
Plaintiff returned to Dr. Gitlin on 21 January 1999 with complaints of burning pain and discoloration in his upper left extremity. On 9 February 1999 he underwent the initial left cervicothoracic sympathetic block and felt immediate relief. However, several hours after the block subsided, plaintiff experienced an increase in pain. When he returned to Tulane on 11 February 1999 for the scheduled second nerve block and informed Dr. Gitlin of his severe, post-block pain, Dr. Gitlin can-celled the second block. At that time, Dr. Gitlin explained to plaintiff that he was discontinuing the pain management treatment because he believed the nerve blocks alone were not producing positive results. Dr. Gitlin preferred plaintiff back to Dr. Weisberg and also recommended that he see Dr. Marcos Fe-Bornstein, a psychiatrist, and Dr. Philip Griffin, a psychologist.
On 25 June 1999, Dr. Weisberg sent a letter to plaintiffs counsel informing him that he believed plaintiffs pain management should include both nerve blocks and treatment for his anxiety and depression. Because he did not perform nerve blocks, Dr. Weisberg recommended that plaintiff *918 be evaluated by Dr. Morse. Plaintiffs counsel then contacted defense counsel to alert him to the suggested change in physicians and, in a letter dated 29 June 1999, specifically requested defendants’ approval of Dr. Morse as plaintiffs new treating physician.
When defendants failed to respond to plaintiffs request, plaintiffs counsel sent a second letter via facsimile to defense counsel dated 27 July 1999, seeking approval and informing defendants that plaintiff had scheduled an appointment with Dr. Morse for 29 July 1999. Defense counsel responded that same day in a letter to plaintiffs counsel stating that defendants would not authorize a change in physicians in the same specialty without documentation from a health care provider to explain why the change was necessary and that they could not authorize the change on two-days notice.
Without defendants’ authorization, Dr. Morse, a licensed psychiatrist and neurologist specializing in pain management, examined plaintiff on 29 July 1999, verified that he had RSD, and recommended the comprehensive pain management program at Touro for treatment.
■|4After learning of Dr. Morse’s recommendation, defense counsel sent another letter dated 2 August 1999 to plaintiffs counsel stating that defendants would not approve Dr. Morse as a treating physician without evidence documenting that Dr. Gitlin was no longer willing to treat plaintiff. In the letter, defense counsel explained:
The last medical report we saw from Dr. Gitlin stated that Mr. Livaccari did not want to follow-up with additional nerve blocks; therefore, it appears that Mr. Livaccari does not want to treat with Dr. Gitlin rather than Dr. Gitlin having any reluctance to see Mr. Livaccari. In fact, Mr. Livaccari had a good result from the first nerve block. This is the first physician who apparently improved his condition and, yet, Mr. Livaccari shies away from him.
On appeal, the defendants argue that the workers’ compensation judge erred in finding that they were arbitrary and capricious for their refusal to allow a change of physician to Dr. Morse and pain management treatment to Touro because plaintiff was being treated by Dr. Gitlin at Tulane. They further argue that the judge erred in awarding a penalty pursuant to La. R.S. 23:1201 for failure to authorize a change in plaintiffs choice of a physician. Defendants answer the appeal arguing that the workers’ compensation judge erred in calculating the penalty pursuant to La. R.S. 23:1201(F) for defendants’ failure to pay for plaintiffs treatment by Dr. Morse at Touro.
La. R.S. 23:1121 provides, in pertinent part:
B. The employee shall have the right to select one treating physician in any field or specialty. After his initial choice the employee shall obtain prior consent from the employer or his worker’s compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.
IfiC. If the employer or insurer has not consented to the employee’s request to change physicians when such consent is required by this Section, and it is determined by a court having jurisdiction that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee for reasonable attorney’s fees related to this dispute and for any medical expense so incurred by him for an aggravation of the employee’s condition resulting from *919 the withholding of such physician’s services. (Emphasis added).
La. R.S. 23:1201 provides, in part:
E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in ichich any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars- per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. (Emphasis added).
At the trial, the parties stipulated that defendants had approved the following physicians in the respective specialties for plaintiffs treatment: Dr. Ruel — orthopedic surgery; Dr. McClanahan — vascular surgery; Dr. Weisberg — neuropsychiatry; Dr. Gitlin — -anesthesiology; Dr. Griffin— psychology; Dr. Fe-Bornstein — psychiatry; and Dr. Stuart Phillips — orthopedics. They also stipulated that plaintiff underwent independent medical examinations by Dr. Batson and Dr. Robert Mímeles.
Dr. Morse testified at the trial that he examined plaintiff at Dr. Weisberg’s request and verified that plaintiff suffered from RSD. He explained that the two |7nerve blocks performed by Drs. Williams and Gitlin took effect but did not yield positive results because plaintiff experienced even greater pain when the blocks wore off. To obtain optimal results when treating RSD, Dr. Morse explained it was necessary to intervene within the first six months of its onset, as a delay in treatment would aggravate the condition and prolong the rehabilitation period. He testified that had plaintiff received pain treatment in a rehabilitation setting when he first exhibited signs of RSD in March 1997, much of his pain could have been alleviated. Dr. Morse further testified that Dr. Gitlin appropriately treated plaintiff with the nerve block but could do nothing more to treat the RSD in an anesthesia only setting.
In Dr. Morse’s opinion, plaintiff was an excellent candidate for pain management treatment at Touro. Except for the RSD, he found plaintiff to be healthy, in good physical condition, and anxious to get well and return to work. In reviewing plaintiffs medical records, Dr. Morse noted that he had always complied with his physicians’ recommended treatments. Touro, Dr. Morse explained, used a “team approach” to treat patients with RSD. The comprehensive plan included treating patients with nerve blocks, physical and occupational therapy, as well as appropriate psychiatric care in an in-patient, rehabilitation setting. Dr. Morse explained that it was very common for patients with prolonged RSD to suffer from severe depression and anxiety, making it difficult to treat without concurrent psychiatric care. A patient’s brain, he said, controlled the dystrophy and, thus, a stress free environment was necessary for a patient’s treatment.
Lisa Livaccari, plaintiffs wife, also testified at the trial. According to her, Dr. Gitlin declined to perform the second block after plaintiff complained of an |sincrease in pain following the initial block. She testified that she tried to make follow-up appointments with Dr. Gitlin but was unsuccessful. Dr. Gitlin told her and her husband that he was referring plaintiff back to Dr. Weisberg because he could do no more to help him. She further testified that when she and plaintiff returned to Dr. Weisberg he told them that he did not *920 perform nerve blocks and referred them to Dr. Morse.
On cross-examination, defense counsel questioned Ms. Livaccari about a written notation made on 11 February 1999 by Dr. Gitlin’s nurse, which stated, “Patient and his wife were explained the benefits and the risks of doing another [nerve block]. They did not ask to proceed with another.” She responded that the notation was not correct and was out of context. Ms. Livac-cari testified that when she and her husband returned to Tulane for the second block, Dr. Gitlin’s nurse prepared plaintiff for the procedure and made a written notation that plaintiffs pain increased after the first block. The nurse left the examining ' room to converse with Dr. Gitlin. Shortly thereafter, Dr. Gitlin entered and told plaintiff that he would not perform the second block. According to her, at that point, plaintiff never had the option to cancel the second block for Dr. Gitlin had made the decision.
Defendants introduced into evidence the deposition testimony of Dr. Gitlin to support their claim that plaintiff himself rather than Dr. Gitlin discontinued the pain treatment at Tulane and therefore, they were not arbitrary in refusing to authorize the change for plaintiffs pain management treatment to Dr. Morse and Touro. Dr. Gitlin stated that he had performed an initial nerve block on plaintiff but that it did not produce a positive result. In his physician’s progress notes from plaintiffs 11 February 1999 visit, Dr. Gitlin noted, “it was my decision to defer |9this type of treatment.” Although he declined to administer the second block, he testified that he never refused to treat plaintiff. Nonetheless, Dr. Gitlin acknowledged that, other than performing a nerve block, he could do nothing else to treat plaintiffs RSD. He referred plaintiff back to Dr. Weisberg and recommended that plaintiff seek psychiatric and psychological help because he suspected a mental factor impeded plaintiffs progress.
The standard of review for findings of fact by a judge in a workers’ compensation case is “manifest error,” and it is the appellate court’s duty to determine not whether the factfinder’s conclusion was right or wrong, but whether it was reasonable. Where two permissible views of evidence exist, a factfinder’s choice between them can never be manifestly erroneous. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, 1164.
After reviewing the record and evidence before us, it is clear that plaintiff requested an authorization for a change in physicians from Dr. Gitlin at Tulane to Dr. Morse at Touro. In fact, he specifically requested defendants’ approval’ for the change in physicians in his 29 June 1999 letter. This being the case, we must determine whether the workers’ compensation judge erred in determining that the defendants’ withholding consent for the change was arbitrary and capricious, or without probable cause pursuant to La. R.S. 23:1121(0).
The record reflects that the defendants knew as early as 22 June 1999 that Dr. Gitlin would no longer treat plaintiff and that Dr. Weisberg had referred him to Dr. Morse for pain treatment. Because both Dr. Gitlin and Dr. Morse specialized in pain management, plaintiff had to obtain defendants’ prior consent to change physicians pursuant to La. R.S. 23:1121(B).
| ^Plaintiff sought consent in writing on three occasions — 29 June, 27 July, and 2 August 1999. In the 2 August 1999 request, plaintiff’s counsel included a copy of Gr. Gitlin’s 22 June 1999 letter to him informing him that plaintiff had not responded to the nerve block treatment and, therefore, he had referred him back to Dr. Weisberg. Plaintiffs counsel also included copies of Dr. Weisberg’s letters of 18 and 25 June 1999 stating that he referred *921 plaintiff to Dr. Morse because he did not perform nerve blocks. After receiving three written requests and documentation evidencing Dr. Gitlin’s unwillingness to continue treating plaintiff and Dr. Weis-berg’s inability to do so, as of the 8 November 1999 trial date, defendants still had not approved plaintiffs request for a change in pain management physicians. Furthermore, when Dr. Gitlin gave his deposition on 30 August 1999 defendants were well aware that any delay in plaintiffs treatment would likely exacerbate his RSD. Under these circumstances, we find the workers’ compensation judge did not err in concluding the management treatment recommended by Dr. Morse at Touro was reasonable and necessary and that defendants were arbitrary and capricious in withholding their consent to plaintiffs request for a change in physicians from Dr. Gitlin to Dr. Morse.
La. R.S. 23:1121(0 provides for an award of attorney’s fees only, not penalties, when an employer or insurer arbitrarily and capriciously withholds consent to the employee’s request to change physicians. The provision, however, is penal in nature because its purpose is to punish arbitrary and capricious behavior on the part of the employer or insurer and, therefore, it must be strictly construed. Smetak v. Louisiana Workers’ Compensation Corporation, 97-1497 (La.App. 3 Cir. 4/15/98), 711 So.2d 417, 419.
Inin this case, the workers’ compensation judge did not err in awarding plaintiff attorney’s fees of $2,000.00 for defendants’ arbitrary and capricious withholding of consent. However, she erred in assessing a penalty of $2,000.00 against the defendants because La: R.S. 23:1121(0) does not provide for penalties.
Finally, we find no merit to plaintiffs argument that defendants’ failure to approve his request for pain treatment by Dr. Morse constituted a failure to pay a medical benefit pursuant to La. R.S. 23:1201. Paragraph (F) of La. R.S. 23:1201 is penal and is to be strictly construed. The language allows penalties and attorney fees for failure to pay medical benefits in accordance with paragraph (E) of the statute. Smetak v. Louisiana Workers’ Compensation Corporation, supra. Here, the evidence clearly reflects that plaintiff had obtained pain treatment by Dr. Gitlin at Tulane, albeit unsuccessful, with defendants’ approval. Defendants’ failure to consent to a change in physicians to Dr. Morse at Touro is not a failure to pay a medical benefit. La. R.S. 23:1201 does not support the award of penalties for defendants’ failure to consent to a change in physicians.
Accordingly, for the foregoing reasons, we amend the judgment of the Office of Workers’ Compensation to delete the $2,000.00 penalty assessed against the defendants. In all other respects that judgment is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.

. The disputed claim at issue in this appeal is the second claim filed by the plaintiff with the Office of Workers' Compensation. His first claim, which involved the defendants’ failure to timely authorize treatment by a vascular surgeon, an EMG, and several nerve blocks, was at issue and resolved in an earlier appeal. Livaccari v. Alden Engineering Service, unpub., 99-1476 (La.App. 4 Cir. 5/24/00), 761 So.2d 831.