h-AMY, Judge.
The defendant employer appeals the workers’ compensation judge’s determination that the claimant suffered a work-related injury. The employer contends that the claimant’s version of events was unreliable and internally inconsistent. We affirm the ruling of the workers’ compensation judge.
Factual and Procedural Background
The claimant, Yvette Leday, was employed as a health care aide with the defendant employer, Health Care Options, on March 3, 2000. Ms. Leday alleges that, on that date, she was caring for a home-bound patient, Linda Fagerland, when she sustained an injury to her shoulder. Ms. Leday contends that the accident occurred while lifting Ms. Fagerland to position her in her chair. The record indicates that Ms. Leday reported to the emergency room of Our Lady of Lourdes Hospital in Lafayette, on March 5. She complained of “right shoulder burning” and decreased range of motion. On March 17, 2000, Ms. Leday began treatment with her family physician, Dr. John Tassin, and was referred to treatment with Dr. Louis Blanda, an orthopedic surgeon.
Ms. Leday testified that she has not worked since the March 5 emergency room visit. The parties stipulated that workers’ compensation benefits were provided by the employer through August 15, 2000. The present claim for compensation was filed, with the claimant seeking continuation of workers’ compensation benefits as well as penalties and attorney’s fees for arbitrary and capricious behavior. The workers’ compensation judge found in favor of the claimant, crediting her version of events and awarding indemnity benefits and related medical expenses. Penalties and attorney’s fees were denied. Health Care Options appeals, assigning the following as error:
hi. The Workers’ Compensation Judge committed manifest error in holding that the claimant satisfied her burden of establishing a compensable accident;
II. The Workers’ Compensation Judge committed manifest error in holding that the claimant’s inconsistent testimony was entitled to weight;
III. The Workers’ Compensation Judge committed manifest error in disregarding the testimony of two disinterested eyewitnesses to the alleged accident and one other disinterested witness in favor of the inconsistent testimony of the claimant;
IV. The Workers’ Compensation Judge committed manifest error in holding that the claimant was entitled to medical benefits without reference to the requirements that those benefits be reasonable, *391 necessary and related to the accident and in accordance with the Louisiana Fee Schedule.
Y. The Workers’ Compensation Judge committed manifest error in holding that the claimant was entitled to medical treatment in Lafayette, Louisiana because the medical provider of her choosing, Dr. Tassin, is located in Ville Platte, Louisiana.
Discussion
The defendant contends that the workers’ compensation judge erred in relying on the claimant’s version of events as it was internally inconsistent and at odds with the version of events offered by Ms. Fagerland and her daughter, Sherry Wright. Although the defendant makes various arguments regarding the determination that the claimant satisfied her burden of proof, the defendant essentially argues that the workers’ compensation judge erred in crediting the claimant’s testimony over that offered by its own witnesses.
Following a healing, the workers’ compensation judge acknowledged that the version of events offered by the claimant and defense witnesses varied. As will be seen below, the accounts offered by each party varied in who was present at the time |3of the alleged accident, what was said, and at what time Ms. Leday reported the accident to her employer.
Ms. Leday testified at the hearing that she arrived at Ms. Fagerland’s home and was the only other person present. She explained that she took Ms. Fagerland’s vital signs and bathed her and, at that time, Sherry Wright entered the house. Ms. Leday contends that she lifted Ms. Fagerland to position her in the chair and then lifted her once again to place her at the appropriate height. Ms. Leday contends that, on this second lift, she felt a pop in her shoulder and exclaimed “ouch.” Ms. Leday testified that when she did so, Ms. Fagerland inquired as to what was wrong, and she responded that her shoulder had popped. During this period, Ms. Leday testified, Ms. Wright was out of the room, but then reentered. She stated that she did not inform Ms. Wright that her shoulder was painful. Ms. Leday testified that she then asked Ms. Wright to help position her mother and that, together, they again lifted Ms. Fagerland.[1]
The defendant presented the depositions of Ms. Fagerland and Ms. Wright, both of whom explained that Ms. Wright was at the house at the time Ms. Leday arrived. Both denied that they heard Ms. Leday exclaim in pain, denied the related conversation reported by Ms. Leday, and both reported that the claimant was laughing and smiling prior to her departure.
Another discrepancy between the claimant’s version of events and that offered by the defendant is Ms. Leday’s reporting of the accident. Ms. Leday testified that, | ¿following her visit to Ms. Fagerland’s home, she attended to another patient and encountered Karen Landry, a Health Care Options nurse. Ms. Leday testified that she told Ms. Landry of her injury. Later in the day, she visited the Health Care Options office, met Ms. Landry, who continued to inquire about her shoulder, and that, when she was doing so, she encountered fellow employees, Rosalyn Alexan *392 der, Georgiana Amos, and another employee named Kim. Ms. Leday explained that she did not report the injury to the Director of Nursing, Graciana Breaux, because she was told that Ms. Breaux was not in the office that day, but that, upon direction from Rosalyn Alexander, she reported the accident to Ms. Breaux on March 5. Ms. Amos also testified, explaining that Ms. Leday informed her that she had injured her shoulder. Ms. Amos stated that she believed Ms. Leday informed her of the injury on the afternoon of the occurrence.
The defendant presented the testimony of Ms. Breaux who testified that she saw Ms. Leday at the Health Care Options office on March 3 and spoke with her. She denied that Ms. Leday informed her of the injury and testified that she first heard of the accident on March 5 when she received a telephone call from Ms. Leday.
The oral reasons for ruling rendered by the workers’ compensation judge reveals the judge’s appreciation of the discrepancies in the versions of events offered by the parties and the ultimate favor found in the claimant’s version. The workers’ compensation judge stated, in part, as follows:
Folks, it is a very close case. Mr. Walt-ner is correct that it is essentially a credibility case.... It is a very, very close case but I am going to find in Ms. Leday’s favor based on a number of things. I do find that it is the barest of preponderance. I agree that — with Mr. Waltner to be [sic] extent that there are a number of inconsistencies that simply cannot be resolved in the various items of evidence. But I think what persuades me to a great extent is the fact that Ms. Leday does appear to genuinely | ¿feel very badly. She appears to be in pain. She — and it’s nothing that’s overly dramatic as I may have seen from time to time. It just seems to be a genuine feeling of discomfort and not feeling well.
I accept the testimony of Ms. Amos that they did discuss it that afternoon. And what I was persuaded by Ms. Amos’ testimony is that she — she was referring to it in the context of other things. It was going to affect her work schedule that weekend. Someone else needed to be scheduled. That’s how she remembered it. That had a very genuine sincere ring to it. I also didn’t get the feeling that Ms. Amos was here because she had an ax to grind. This was the way she recalled it, and she was asked to come and testify to that and she did.
I also — to a lesser degree note that Ms. Amos indicated and the record will exactly reflect what she said, but that she didn’t see anyone there that afternoon to report anything to. And it is my understanding that Ms. Amos was going to her mailbox, and had Ms. Breaux been at her office with the door open, I would have imagined Ms. Amos to have seen her. I’m not saying that Ms. Breaux was being dishonest. It’s just something that I — that tends to support Ms. Leday’s version of the events.
As discussed in the workers’ compensation judge’s reasons, Ms. Leday’s testimony cannot be reconciled with that offered by Ms. Fagerland and Ms. Wright. Neither is it consistent with Ms. Breaux’s testimony. Having been presented with the various accounts, however, the workers’ compensation judge made a clear credibility determination, placing weight on Ms. Leday’s appearance on the day of the hearing. It is this type of factor that makes such credibility determinations inappropriate on appeal. The Louisiana Supreme Court has explained:
*393 When findings are based on determination regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s | (¡finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989) (citations omitted). While the Rosell principle is regularly repeated in matters involving credibility determinations, its reasoning is particularly applicable in this case. Discrepancies existed between the two versions of events and were of such a nature that the witness testimonies could not be reconciled. The workers’ compensation judge found one version more credible, basing that decision, in part, on Ms. Leday’s demeanor and tone on the day of the hearing. This type of observation is not possible on appeal. Furthermore, contrary to the defendant’s argument, we find no inconsistencies in the claimant’s version of events, internal or otherwise, sufficient to have required the workers’ compensation judge to discredit her testimony. Accordingly, we find this argument to be without merit.

Medical Expenses

Next, the defendant argues that the workers’ compensation judge erred in failing to limit the medical treatment awarded to that described in La.R.S. 23:1203(A), which provides:
In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.
The defendant fears that the language awarding Ms. Leday medical treatment is not responsive to the statute as it does not clearly indicate that the employer must only 17provide that which is occasioned by the work-related accident. We find the defendant’s argument to be without merit. The judgment rendered in this case provided:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Yvette Leday, is entitled to compensation and further medical treatment (arthrogram); that Dr. A. John Tassin be paid for his medical treatment rendered to Yvette Leday, effective immediately.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all treatment which are [sic] reasonable and necessary under Louisiana Workers’ Compensation law, be performed in Lafayette where the programs and/or services are available in Lafayette.
*394 There is nothing in the record to indicate that the fees awarded relate to anything other than the work-related injury the workers’ compensation judge found to be proven. Furthermore, the arthrogram, specifically ordered in the judgment, was recommended not only by the claimant’s choice of orthopedic surgeon, Dr. Blanda, but by the employer’s choice of physician as well. This argument lacks merit.
Finally, the defendant argues that the workers’ compensation judge erred in awarding treatment in Lafayette, when the claimant’s choice of treating physician, Dr. Tassin, is located in Ville Platte. Thus, the defendant contends, the claimant will essentially be offered a second choice of physician. What the defendant ignores is that the claimant’s choice of general practitioner was Dr. Tassin. While Dr. Tassin is located in Ville Platte, he referred Ms. Leday to Dr. Blanda, an orthopedic surgeon in Lafayette. Dr. Blanda recommended the arthrogram which was awarded. La.R.S. 23:1121(B) provides:
The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers’ | ^compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for a change to a treating physician in another field or specialty.
Clearly, Dr. Tassin, a general practitioner, and Dr. Blanda, an orthopedic surgeon, are not in the same field or specialty. Review of the record indicates that Dr. Blanda offered the claimant more specialized care. In Dr. Tassin’s deposition, he indicated that he was prepared to offer treatment to Ms. Leday in conjunction with the treatment recommended by Dr. Blanda. Dr. Tassin indicated that he would defer to Dr. Blanda on ratings of disability and prognosis or diagnosis. As Dr. Blanda was clearly the claimant’s choice of specialist, we find no error in the workers’ compensation judge’s award of medical treatment in Lafayette, the location of her choice of orthopedic surgeon.
DECREE
For the foregoing reasons, the ruling of the workers’ compensation judge is affirmed. All costs of this matter are assigned to the defendant, Health Care Options.
AFFIRMED.

. The defendant argues that the claimant’s testimony is internally inconsistent because, in Ms. Leday's deposition, she reported only two lifts and did not indicate that she had performed the third lift. Having reviewed the deposition, we do not find any inconsistency other than the omission of the third lift, performed with Ms. Wright. At both, however, she indicated that the ‘pop” occurred after she attempted to position Ms. Fagerland following the first lift.