844 So.2d 329 (2003)
Samantha LUPER
v.
WAL-MART STORES.
No. 2002 CA 0806.
Court of Appeal of Louisiana, First Circuit.
March 28, 2003.
*331 Catherine Orwig, Metairie, for Defendant/Appellant, Wal-Mart Stores.
Vijay Venkataraman, Baton Rouge, for Plaintiff/Appellee, Samantha Luper.
Before: CARTER, C.J., WHIPPLE and CIACCIO, JJ.[1]
WHIPPLE, J.
In this workers' compensation matter, the defendant/employer, Wal-Mart, appeals the judgment of the Office of Workers' Compensation ("OWC"), ordering it to pay certain medical expenses and assessing penalties and attorney's fees against it. The claimant answered the appeal, seeking an increase in the amount of attorney's fees awarded. For the following reasons, we affirm in part, reverse in part, amend in part and, as amended, affirm.

FACTS AND PROCEDURAL HISTORY
Claimant, Samantha Luper, was injured in the course and scope of her employment with Wal-Mart on September 20, 1999. While descending a ladder, claimant missed the last step and fell to the floor, landing on her right wrist and arm. After the accident, claimant was initially taken to the Bogalusa Medical Center for treatment. After a physical examination and x-ray of her wrist, she was transferred to St. Tammany Hospital in Covington, Louisiana, for further required treatment.
There, she was seen by Dr. Mark Hontas, who diagnosed her injury as a fracture of the ulnar styloid with significant displacement. He placed her wrist in a splint to reduce the fracture and instructed that she obtain follow-up treatment in his office. During a follow-up visit with Dr. Hontas, he noted changes in her wrist and recommended surgery. Wal-Mart then approved treatment with Dr. Eric George, *332 an orthopedic surgeon who specialized in hand injuries. After reviewing the x-rays and examining claimant, Dr. George found that the fracture remained unstable and that it required surgical intervention, including a closed reduction procedure and application of an external fixation device. Claimant agreed to the surgery, which was performed on October 15, 1999 at East Jefferson General Hospital. After the surgery, she continued treatment with Dr. George until September 1, 2000. She also completed a course of physical therapy as recommended by him. The external fixation device was eventually removed from her hand, and Dr. George released claimant to return to work in a "light work capacity."
On March 31, 2000, claimant was seen, at Wal-Mart's request, by Dr. R. Jay French, another orthopedic surgeon who specializes in treatment of injuries to the hand. Dr. French's diagnosis, as set forth in his report, was that claimant had "a right distal radius fracture from which she has recovered, but a persistent ulnar styloid fracture non-union." He opined "that her current symptoms [of pain] were related to the ulnar styloid non-union." He recommended injections at the base of the ulnar styloid at the site of the non-union in an effort to possibly help relieve her symptoms. He further recommended that if the injections failed, claimant should submit to a surgical procedure to either remove the ulnar styloid non-union or fix the fracture with a tension band technique. Dr. French concluded his report by assessing claimant with a ten percent right upper extremity impairment.
Claimant returned to Dr. George on April 28, 2000 complaining that she was unable to work due to the pain she was experiencing. During that visit, she advised Dr. George that she had sought a second opinion from Dr. French. After reviewing Dr. French's report, Dr. George agreed that the suggested steroid injections might relieve some of claimant's symptoms, but disagreed with Dr. French's recommendation to perform the ulnar styloid fragment removal surgery. Dr. George completed a cortisone injection into claimant's wrist as suggested, and then referred claimant to her family physician, Dr. Mark James, for future injections. Claimant then began receiving cortisone injections from Dr. James, as needed, at her expense.[2]
According to claimant's testimony, when Dr. George refused to perform the surgery suggested by Dr. French, she, her husband, and her store manager attempted to contact Wal-Mart's claims adjuster, Kristan Sattler, who was employed by Claims Management, Inc., to request that Wal-Mart approve the treatment recommended by Dr. French. However, they never received a response to their phone calls and messages. At that point, claimant sought assistance from an attorney.
Once retained, counsel for claimant sent Ms. Sattler a letter dated September 6, 2000 requesting a copy of claimant's medical records, a copy of claimant's statement, a copy of the accident report, copies of claimant's check stubs or earnings records, and her calculation of claimant's average weekly wage and compensation rate. Most importantly, he specifically asked whether the suggested treatment by Dr. French would be approved. Ms. Sattler responded by letter dated September 7, 2000 wherein she requested his taxpayer identification number for tax purposes concerning any attorney fee payments, but *333 was non-responsive to any of his above requests. Counsel for claimant then sent a second letter to Ms. Sattler dated September 22, 2000, essentially re-urging his initial requests. After again receiving no response to his request, he sent a third letter, on October 12, 2000, requesting authorization of the recommended treatment or alternatively, reasons for non-approval. In the third letter to Ms. Sattler, counsel for claimant specifically stated, "Please authorize the treatment plan. If you are not authorizing the treatment plan, please state each and every reason you have for non-approval. If you are contesting medical necessity please ask for the appointment of an IME."
When Ms. Sattler failed to respond to the third letter, claimant filed a form 1008 on December 4, 2000, requesting authorization of the medical treatment recommended by Dr. French and assessment of penalties and attorney's fees against the employer. On August 14, 2001, Wal-Mart filed a motion to compel and request for independent medical examiner based on the differing medical treatment opinions of Dr. French and Dr. George, and a motion in limine to exclude any medical evidence offered by Dr. F. Allen Johnston. Claimant had obtained an evaluation by Dr. Johnston on July 23, 2001, (at her own expense) after Dr. George released her to return to work while she was still experiencing pain. Dr. Johnston's recommendation was that she schedule an excision of non-union ulnar styloid.
Dr. Kathleen Robertson, an orthopedic hand specialist at Tulane University, was selected by the OWC judge and agreed upon by the parties to perform the independent medical examination. The motion in limine was denied.
Based on her examination of claimant and review of the medical records, Dr. Robertson concluded that claimant "would benefit from some type of surgical intervention for the ulnar-sided pain at the non-union site." She also concluded that claimant had developed adherence of her scars from the external fixator device, which she suggested could be improved with surgical release. Dr. Robertson also recommended that claimant "have the ulnar styloid non-union addressed, since this is [claimant's] most painful area."
After several continuances, trial was held on January 17, 2002. At trial, the parties entered into the following stipulations:
1. That on September 20, 1999, claimant suffered an injury to her right wrist or right upper extremity following a fall, while in the course and scope of her employment with Wal-Mart.
2. That Wal-Mart concedes that the procedures recommended by Dr. French are reasonable and agrees to the procedures.
At the conclusion of the trial, the record was left open for the taking of additional evidence; thereafter, judgment was rendered on February 8, 2002.[3] The OWC awarded claimant $4,000.00 in penalties *334 and $10,000.00 in attorney's fees, finding that Wal-Mart was arbitrary and capricious in its handling of Luper's claim. The judgment further declared that claimant was entitled to change her choice of physician to Dr. Robertson and was entitled to the treatment recommended by Dr. Robertson.
Wal-Mart appeals, challenging: (1) the finding that it was arbitrary and capricious for failing to authorize a change of physician; (2) the finding that Wal-Mart is responsible for Dr. Johnston's medical bill; (3) the assessment of a $2,000.00 penalty for its failure to timely pay Dr. James' medical bill; (4) the assessment of a $2,000.00 penalty for failing to timely pay Dr. Johnston's medical bill; and (5) the award of attorney's fees. Claimant answered the appeal, requesting an increase in the attorney's fees award to reflect the additional fees incurred in defending this appeal.

DISCUSSION

FINDING THAT WAL-MART WAS ARBITRARY AND CAPRICIOUS IN FAILING TO AUTHORIZE A CHANGE OF PHYSICIAN (Assignment of Error No. 1)
In its first assignment of error, Wal-Mart challenges the factual finding by OWC that it was arbitrary and capricious in refusing to allow claimant to change her choice of physician to Dr. French, the physician to whom Wal-Mart had referred her. As set forth above, the OWC awarded claimant $4,000.00 in penalties and $10,000.00 in attorney's fees for Wal-Mart's "arbitrary and capricious handling of Ms. Luper's claim." In the reasons for judgment, outlining the arbitrary and capricious behavior by Wal-Mart, the OWC judge specifically cited Wal-Mart's refusal to authorize the change of physician.
Pursuant to LSA-R.S. 23:1121(B), the employee has the right to select one treating physician in any field or specialty. After his initial choice of physician, the employee is required to obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. Additionally, LSA-R.S. 23:1121(C) provides that when the employer refuses to consent to the requested change of physician and the OWC determines that the refusal was arbitrary and capricious or without probable cause, the employer or insurer shall be liable to the employee for reasonable attorney's fees related to the dispute.[4]Washington v. Lyon's Specialty Company, 96-0263, pp. 7-8 (La.App. 1st Cir.11/8/96), 683 So.2d 367, 373, writ denied, 96-2944 (La.1/31/97), 687 So.2d 408. A determination of whether an employer has been arbitrary or capricious, and subject to an award of attorney's fees, is a question of fact and is subject to the manifest error standard of review. See Kirn v. East Jefferson Hospital, 96-0838, p. 10 (La.App. 1st Cir.2/14/97), 691 So.2d 127, 133.
The evidence shows that claimant, her husband, and her store manager attempted to contact Ms. Sattler by placing numerous phone calls and leaving messages for her in an effort to obtain Wal-Mart's *335 approval of the treatment recommended by Dr. French. Despite their attempts, Ms. Sattler failed to respond to their phone calls and messages. When claimant's efforts seemed fruitless, claimant sought help from an attorney. However, even after her attorney became involved and attempted to obtain an answer to her request to change physicians, Sattler failed to provide any meaningful response to three letters he sent to her. An employer or insurer may not proceed with an attitude of indifference to the injured worker's situation. Kirn, 96-0838 at p. 10, 691 So.2d at 133.
In finding that Wal-Mart was arbitrary and capricious in its refusal to respond to claimant's request to change physicians, the OWC judge stated:
[T]he Court notes that Wal-Mart conceded at trial that as of April 2000 a medical dispute had arisen over whether future surgery was warranted. Wal-Mart attempts to argue that this recommendation was reasonably controverted by Dr. George's opinion that surgery was not warranted and that his opinion should be given the greatest weight as the treating physician.
However, the uncontroverted testimony indicates that Ms. Luper and her store manager both attempted to have the treatment with Dr. French approved and a follow-up appointment set with Dr. French but the adjuster would not return their calls. There is nothing in the Act which prevents a Claimant from seeking actual treatment with an employer's choice of physician. More importantly, Ms. Luper was forced to retain an attorney due to Wal-Mart's inaction.
Counsel for Ms. Luper faxed three letters to the adjuster for Wal-Mart. The adjuster testified by deposition taken after the trial that she only received the September 6th, 2000, correspondence; and she admits that even though the letter specifically requested approval for the treatment recommended by Dr. French, she only responded by sending a form letter requesting counsel's tax payer ID number. Her testimony that she did not receive the September 22nd, 2000, or October 12th, 2000, correspondence is self-serving at best. Given that copies of these letters with fax confirmation sheets introduced at trial indicate they were successfully transmitted to the adjuster's telephone numbers, the Court finds that her testimony is not credible.
The Court also finds that Wal-Mart was arbitrary and capricious in withholding consent to allow Ms. Luper to change physicians to Dr. French under section 1121(C). As further evidence of Wal-Mart's mishandling of Ms. Luper's claim, Wal-Mart attempts to argue that even after counsel's repeated requests for an independent medical exam regarding the necessity for further surgery, it is somehow Ms. Luper's fault in not applying for the IME herself since any party may apply under the Act.
This overlooks the fact that counsel's request for Wal-Mart to obtain another surgical opinion beginning in September of 2000 were met with total silence and inaction until Wal-Mart decided to apply for the IME themselves in August of 2001 based on the exact same situation that existed in April of 2000; namely, the contradictory medical opinions of Dr. George and Dr. French. This almost yearlong delay in requesting a third opinion regarding surgery ultimately resulted in delays in getting Ms. Luper's case to trial.
This argument also overlooks the fact that regardless of who requested the IME, the employer or their insurer is *336 responsible for all costs associated with the examination. Thus, once the request was made by Ms. Luper's counsel, it was incumbent upon Wal-Mart to respond in some form or fashion which was never done.
Under these circumstances, we find no manifest error in the determination that Wal-Mart was arbitrary and capricious in withholding its consent to claimant's request for a change in physicians from Dr. George to Dr. French. See Livaccari v. Alden Engineering Service, XXXX-XXXX, pp. 9-10 (La.App. 1st Cir.3/21/01), 785 So.2d 915, 920-921, wherein the court affirmed an award of attorney's fees where claimant sought consent in writing on three occasions and presented evidence of his treating physician's unwillingness to continue treating him, but employer nonetheless withheld consent to plaintiff's requested change in physician.
We find no merit to this assignment.

FINDING THAT WAL-MART IS RESPONSIBLE FOR DR. JOHNSTON'S MEDICAL BILL (Assignment of Error No. 2)
In this assignment of error, Wal-Mart challenges the OWC judge's finding that it is responsible for payment of Dr. Johnston's medical bill, citing LSA-R.S. 23:1121(D), which allows claimant to obtain a second medical opinion at her own cost. As set forth in LSA-R.S. 23:1121(D):
After all examinations have been conducted but prior to any order directing the injured employee to return to work, the employee shall be permitted, at his own expense, to consult with and be examined by a physician of his own choosing. Such report shall be considered in addition to all other medical reports in determining the injured employee's fitness to return to work. Should disagreement exist, after such consultation and examination, as to the fitness of the employee to return to work, the provisions of R.S. 23:1123 shall be followed.
Claimant argues that LSA-R.S. 23:1121(D) is inapplicable herein because the purpose of her visit with Dr. Johnston was to determine what more could be done to relieve her symptoms, not to determine whether or not she was fit to return to work as set forth in LSA-R.S. 23:1121(D). In support of her argument, claimant notes that while her visit with Dr. Johnston was on July 23, 2001, the last time she had seen Dr. George was in September of 2000, nearly eleven months earlier. Since claimant's request to follow up treatment with Dr. French after her March of 2000 visit was either refused or ignored, the only treatment she was receiving at the time to relieve her pain was cortisone injections from Dr. James.
In determining that Wal-Mart was responsible for Dr. Johnston's medical bill, the OWC judge found that the statute was designed to prevent doctor shopping and that the facts as they existed at the time of claimant's visit with Dr. Johnston did not squarely fit within the language of LSA-R.S. 23:1121(D). The OWC judge further found that Wal-Mart's inaction in either granting or denying claimant's request for further treatment for the period at issue, i.e., approximately sixteen months, amounted to "essentially a termination of her medical benefits." We agree.
Claimant's testimony at trial revealed the purpose of her appointment and evaluation by Dr. Johnston, as follows:
Q. Why did you want to go to a doctor at that point?
A. Because I was trying to see what other options was open that could be done for my arm.
Q. Why didn't you go back to Dr. George?
A. He said he had nothing else to offer me.

*337 Q. How about Dr. French?
A. Wal-Mart wouldn't let me go back to see Dr. French.
Louisiana Revised Statute 23:1121(D) allows injured claimants to seek and consult with physicians of their choice in order to determine "fitness to return to work." The evidence clearly shows that claimant did not seek the services of Dr. Johnston for the purpose of returning to work, but rather to address the continuing problems she was having with her arm. Under the circumstances, we find no error in the determination that Wal-Mart was responsible for Dr. Johnston's medical bill.
This assignment lacks merit.

ASSESSMENT OF $2,000.00 PENALTY AGAINST WAL-MART FOR FAILURE TO TIMELY PAY DR. JAMES' MEDICAL BILL (Assignment of Error No. 3)
Wal-Mart next assigns error to the OWC judge's assessment of a $2,000.00 penalty against it and in favor of claimant for Wal-Mart's failure to timely pay Dr. James' medical bill, contending that the bill was reasonably controverted. Dr. James, claimant's family physician, provided cortisone injections to claimant as recommended by Dr. George, a physician specializing in hand orthopedics.
The employee shall have the right to select one treating physician in any field or specialty. Leday v. Health Care Options, XXXX-XXXX, p. 7 (La.App. 3rd Cir.4/17/02), 824 So.2d 389, 394. The employee, however, is not required to obtain approval for a change to a treating physician in another field or specialty. Leday, XXXX-XXXX at p. 8, 824 So.2d at 394. Thus, claimant's choice to receive the injections from Dr. James, rather than Dr. George, is certainly permissible as the two practice in different fields of specialty.
Wal-Mart, however, contends that claimant failed to submit sufficient documentation evidencing any expenses for which claimant is entitled to reimbursement. In ruling, the OWC judge relied on a bill, itemizing Dr. James' expenses, introduced by claimant at trial. The evidence introduced in the record further shows that Dr. James' bill was faxed to counsel for Wal-Mart and received on May 20, 2001, according to the fax confirmation sheet. Wal-Mart's claims adjuster testified she did not receive that information. The OWC judge found the claimant's evidence more credible. The trial court's credibility determinations are entitled to great weight and will not be disturbed on appeal absent manifest error. Schexnayder v. Exxon Pipeline Co., XXXX-XXXX, p. 6 (La.App. 5th Cir.3/13/2002), 815 So.2d 156, 160. The OWC judge found that "[a]s of that date, Wal-Mart had the duty to either pay the expenses for the injections or investigate the medical necessity and charges. Since neither was done, Ms. Luper is entitled to a penalty in the amount of $2,000.00 under Louisiana Revised Statute 23:1201(F), plus attorney's fees."[5] On review, we find no error.
The record demonstrates that Wal-Mart failed to take any action to reasonably controvert the expenses attributable to the cortisone injection treatment provided by Dr. James. Accordingly, we find no error in the OWC judge's award of penalties against Wal-Mart for its failure to timely pay Dr. James' medical bill.
This assignment lacks merit.

*338 ASSESSMENT OF $2,000.00 PENALTY FOR FAILURE TO TIMELY PAY DR. JOHNSTON'S MEDICAL BILL (Assignment of Error No. 4)
Wal-Mart also challenges the OWC judge's assessment of a separate $2,000.00 penalty against Wal-Mart and in favor of claimant for Wal-Mart's failure to timely pay Dr. Johnston's medical bill, claiming again that the bill was reasonably controverted.
Claimant introduced proof of Wal-Mart's receipt of Dr. Johnston's medical bill and records on August 1, 2001. While Wal-Mart does not deny receipt of Dr. Johnston's bill, it claims that because this expense was reasonably controverted, "on the grounds that his evaluation was sought after Dr. George released the Claimant to return to work," Wal-Mart is exempt from any assessment of penalties pursuant to LSA-R.S. 23:1201(F)(2).
While we ultimately agree herein with the OWC judge's determination that Wal-Mart is responsible for payment of Dr. Johnston's medical bill, we find that Wal-Mart reasonably controverted payment of the bill, based on its reliance on LSA-R.S. 23:1121(D), as discussed in the previous assignment. For these reasons, the assessment of the $2,000.00 penalty for Wal-Mart's failure to timely pay Dr. Johnston's medical bill is reversed.

AWARD OF ATTORNEY'S FEES (Assignment of Error No. 5 and Answer to Appeal)
Finally, Wal-Mart challenges the OWC judge's award of attorney's fees, claiming that the award of $10,000.00 is excessive. As set forth above, we agree that Wal-Mart's actions (or lack thereof) in refusing to address claimant's request to change treating physicians in order to obtain the recommended treatment constitutes arbitrary and capricious behavior. Thus, pursuant to LSA-R.S. 23:1121(C), claimant was entitled to an award of reasonable attorney's fees.
Moreover, Wal-Mart's failure to timely pay Dr. James' medical bill constitutes additional arbitrary and capricious behavior for which LSA-R.S. 23:1201(F) also justifies an award of attorney's fees.
In her reasons for judgment, the OWC judge based her award on what she termed a "constructive discontinuance of medical benefits" by Wal-Mart. After a thorough review of the record, and considering the particular facts and circumstances presented herein, we cannot say that the award of attorney's fees rendered herein is particularly abusive. As such, the attorney's fee award of $10,000.00 is affirmed.
Moreover, we find merit to claimant's answer to appeal requesting that claimant be awarded additional attorney's fees to encompass the costs of defending this appeal. Thus, we increase the award of attorney's fees from $10,000.00 to $12,500.00.

CONCLUSION
For the above and foregoing reasons, the portion of the February 8, 2000 judgment of the OWC assessing a $2,000.00 penalty against Wal-Mart for failing to timely pay Dr. Johnston's medical bill is reversed. The portion of the judgment awarding claimant attorney's fees is amended to increase the award from $10,000.00 to $12,500.00. All other portions of the judgment are affirmed. Costs of this appeal are assessed against defendant/appellant, Wal-Mart Stores.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART, AND, AS AMENDED, AFFIRMED.
NOTES
[1] Judge Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although claimant had health insurance available through her husband's employment, she was responsible for paying one hundred percent of the premium as her husband was disabled. Claimant was also responsible for a co-payment.
[3] The OWC left the record open to allow Wal-Mart to supplement with the deposition of the claim representative, Kristan Sattler, and other documentary evidence. Although both sides' briefs refer to the deposition of Kristan Sattler, the record on appeal does not contain the deposition. As the appellant, Wal-Mart is charged with the responsibility of completeness of the record for review, and the inadequacy of the record is imputable to the appellant. Carter v. Barber Brothers Contracting Co., Inc., 623 So.2d 8, 10 (La.App. 1st Cir.), writ denied, 629 So.2d 1180 (La.1993). The appellate court presumes that the trial court's ruling is correct if an inadequate record is transmitted. Succession of Populus, 95-1469, p. 4 (La.App. 1st Cir.2/23/96), 668 So.2d 747, 749.
[4] Although LSA-R.S. 23:1121(C) authorizes only the award of attorney's fees, not penalties, for arbitrary and capricious refusal to authorize a change in physicians, the OWC's award of penalties and attorney's fees herein was also based on the findings that Wal-Mart had violated its duties under LSA-R.S. 23:1201(F) and 23:1201.2 based on its failure to provide payment of medical expenses incurred. Revised Statute 23:1201(F) specifically authorizes the assessment of a penalty against the employer or insurer for failure to pay medical benefits due where the claim was not reasonably controverted.
[5] Louisiana Revised Statutes 23:1201(F) provides for the assessment of penalties and attorney's fees for each day that "all compensation and medical benefits remain unpaid." It also provides an exemption from the assessment of penalties if "the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control."